FILE COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE JONES

-------------------------------------------------------------X

N.R., N.R. on behalf of T. R.,

07 CIV 9648

        Plaintiff,

        v.                              COMPLAINT

THE DEPARTMENT OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW YORK, a/k/a,
THE BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK, and
JOEL KLEIN, in his official capacity as Chancellor
of the New York City School District,



        Defendants.

-------------------------------------------------------------X

## PRELIMINARY STATEMENT

1. Defendants, the Department of Education of the City School District of the City of New York, a/k/a the Board of Education of the City School District of the City of New York, and Joel Klein, Chancellor of the New York City School District, are required to provide a free and appropriate public education ("FAPE") to all children with disabilities who reside in New York City. 20 U.S.C. § 1400, et seq.; N.Y. Educ. Law §§ 4401, 4404, 4410; 8 N.Y.C.R.R. § 200. Defendants failed to provide FAPE for T.R. for the 2006-2007 school year. Indeed, at the Impartial Hearing held in connection with this action, Defendants conceded that they did not offer an appropriate placement for T.R. As a result, N.R., T.R.'s mother, was forced to find an appropriate placement for T.R. N.R. brings this action to require Defendants to pay the cost of providing FAPE to T.R. for the 2006-2007 school year. Under the Individuals with Disabilities Education Act ("IDEA"), when a school district fails to provide a student with FAPE, the school district may be required to fund private educational services. 20 U.S.C. § 1412 (10)(c)(ii); Sch. Comm. of Burlington Dep't of Educ. of Mass., 471 U.S. 359 (1985).

## JURISDICTION

2. This Court has jurisdiction under 28 U.S.C. § 1331, in that claims are asserted under the laws of the United States; under 28 U.S.C. § 1343(a), in that claims are asserted under laws providing for the protection of civil rights and under 20 U.S.C. § 1415(i)(2) & (3).

3. Venue is proper under 28 U.S.C. § 1391(b).

4. If successful, Plaintiffs are entitled to costs and attorneys fees under 20 U.S.C. § 1415(i)(3) and 29 U.S.C. § 794a(a)(2).

## PARTIES

5. Initials are used throughout this Complaint to preserve the confidentiality of the infant Plaintiff in conformity with the privacy provisions of the IDEA, 20 U.S.C. § 1417(c), and the Family Educational and Privacy Rights Act, 20 U.S.C. § 1232g.

6. Plaintiff N.R. is the mother of T.R., a child with a disability who resides in Kings County.

7. T.R. is a 7-year old whom Defendants classified as autistic. T.R. has significant behavioral, communication, and academic delays.

8. Upon information and belief, Defendant THE DEPARTMENT OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, a/k/a, THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, ("DOE") is the official body charged with the responsibility for developing policies with respect to the administration and operation of the public schools in the City of New York, including programs and services for students with disabilities. N.Y. Educ. Law §§ 2590, 2590-g (McKinney 2005.) The DOE is a recipient of federal assistance. The DOE is a branch of

municipal government in New York City with its principal place of business located at 52 Chambers Street, New York, New York, 10017.

9. Defendant JOEL KLEIN is the Chancellor of the New York City Department of Education ("the Chancellor") and as such is entrusted with the specific powers and duties set forth in N.Y. Educ. Law § 2590-h (McKinney 2005). The Chancellor's principal place of business is located at 52 Chambers Street, New York, New York, 10017.

## FACTUAL ALLEGATIONS

### N.R. Placed T.R. In An Appropriate Non-Approved Placement When Defendants' Failed to Provide FAPE In Spite of N.R.'s Cooperation

10. T.R. entered P.S. 38 for pre-kindergarten in the fall of 2004, but P.S. 38's faculty asked N.R. to remove T.R. because P.S. 38 could not provide the appropriate structure for T.R. In January of 2005, N.R. enrolled T.R. in the Great Commission Christian School ("GCCS").

11. The Committee on Special Education ("CSE") in its IEP dated October 17, 2005, classified T.R. with a speech and language impairment and recommended a special class in a community school with related services. Prior to the creation of the IEP, N.R. provided the CSE with a letter dated July 14, 2005 from T.R.'s then psychiatrist, Dr. Elizabeth Wolff, that set forth that T.R. was in the high functioning range of children with Pervasive Developmental Disorder, Not Otherwise Specified ("PDD-NOS").

12. N.R. kept T.R. in GCCS for the remainder of the 2005-2006 school year. The CSE did not offer a placement for T.R. for the 2005-2006 school year. In or around March of 2006, GCCS began contacting N.R. concerning T.R.'s behavior and requesting that she retrieve T.R. from school.

13. N.R. was concerned with T.R.'s performance in school and sought a clinical psychological evaluation of T.R.. Dr. Jordana Skurka tested T.R. on three (3) days in March and on April 3, 2006 observed T.R. at GCCS.

14. In the Spring of 2006, N.R. also began to seek an alternative placement for T.R. N.R. contacted, looked at, and visited multiple Approved and Non-Approved New York State Public and Non-Public Schools.[1]

15. N.R. contacted the Rebecca School in or around March or April of 2006. The Rebecca School is a Non-Approved therapeutic day school located at 40 East 30th Street in Manhattan, New York. It is for children four (4) to eighteen (18), promoting the education and development of children with neuro-developmental disorders of relating and communicating, including pervasive developmental disorder and autism.

16. The Rebecca School utilizes the Developmental Individual Difference Relationship-based model and tailors each child's program to his or her specific needs. The classes are eight (8) children, one (1) teacher, and three (3) teacher assistants in each classroom. The Rebecca School provides students with classes in science, art, music and movement, gym and technology and the related services of speech, occupational therapy, physical therapy and counseling as appropriate. The curriculum incorporates academics, floor time, social skills training, sensory integration and behavior modification.

17. In April of 2006, N.R. took a tour of the Rebecca School and on a different day completed an application.

---

[1] Where a school district fails to provide FAPE to a student in a public school, the district may meet its obligation to provide FAPE by reimbursing the costs of tuition for the student's enrollment in a state non-approved non-public school. See 20 U.S.C. § 1412(a)(10(C)(ii); 34 C.F.R. § 300.148; Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359 (1985); Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993); Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005).

18. In late April, N.R. sent a letter to Defendants' CSE requesting that T.R.'s case be reopened and that the CSE recommend an appropriate placement for T.R. for the 2006-2007 school year, and also notified the CSE that N.R. had obtained a psycho-educational evaluation and would provide it to the CSE when it was available.

19. On May 7, 2006, N.R. received an evaluation from Dr. Skurka in which Dr. Skurka diagnosed T.R. with autism, and recommended a special therapeutic school for children with autistic spectrum disorders with a small classroom teacher ratio and a setting that would teach in short segments and modify instruction to the individual needs of the child. She also recommended that T.R. continue individual both speech-language therapy five times a week for 45 minutes and occupational therapy three times a week for 45 minutes.

20. On May 12, 2006, N.R. and T.R. visited the Rebecca School for an interview and a videotaped functional assessment of T.R. was conducted.

21. In mid-May, the Rebecca School accepted T.R., advising that to secure a placement for T.R., N.R. would have to return the contract enclosed with a non-refundable deposit of $10,000 within two weeks. N.R. executed the contract on or about May 30, 2006, in the beginning of June, 2006, and provided the Rebecca School partial payment for $2,000. Without this payment, the Rebecca School would not have reserved a placement for T.R. for the 2006-2007 school year.

22. N.R. provided the Defendants' CSE with Dr. Skurka's evaluation on or about May 25, 2006 and in the beginning of June, 2006, Defendants' CSE sent N.R. a notice for a CSE meeting scheduled for June 12, 2006.

23. At the June 12, 2006 meeting with the Defendants' CSE, N.R. requested that T.R.'s classification be changed from speech and language impairment to autism and that he receive

speech–language therapy and occupational therapy during the summer of 2006. In response to N.R.'s request for a change in T.R.'s classification, in addition to the evaluation of autism from a licensed clinical psychologist that N.R. had already provided to the CSE, the CSE requested a medical diagnosis of autism. At that meeting, N.R. told the CSE that she was interested in a non-public placement.

24. In late June of 2006, N.R. provided a letter to the CSE dated June 19, 2006 from Dr. Alexi Kartachov, T.R.'s psychiatrist, agreeing with the diagnosis that T.R. is autistic.

25. Defendants' CSE held a meeting on July 6, 2006 at which the CSE changed T.R.'s classification from speech and language impaired to autism and developed an IEP that recommended T.R. receive twelve (12) month services, including speech-language therapy and occupational therapy during July and August of 2006 and that T.R. be placed in a special class in a specialized school with a student-teacher ratio of 6:1+1 with related services of individual occupational therapy three (3) times a week for 45 minutes and individual speech-language therapy five times. The projected initiation date for these services was July 20, 2006. In spite of this, Defendants' CSE failed to offer a placement or any services for the summer. N.R. expressed concern about a public school placement for T.R., but the Defendants' CSE did not respond to this concern.

26. Having received no placement offer from Defendants, on or about August 11, 2006, N.R. executed a revised enrollment contract with the Rebecca School that reflected N.R. would seek tuition reimbursement from the Department of Education. Had Defendants offered a public school placement for T.R. prior to August 30, 2006, N.R. could have cancelled the contract under its terms by written notice on or before August 30, 2006.

27. On or about August 24, 2006 N.R. provided notice to Defendants' CSE that she was unilaterally placing T.R. in the Rebecca School and would be seeking tuition reimbursement, and also filed an impartial hearing request under the IDEA and Section 504 of the Rehabilitation Act seeking payment for tuition, transportation and reimbursement for tuition costs already expended. 34 C.F.R. § 104.33.

28. Defendants' CSE sent a letter to N.R. scheduling a meeting for August 30, 2006. When N.R. arrived at the CSE on August 30, no CSE personnel knew why N.R. was there, even when N.R. showed the CSE her appointment letter. The CSE told N.R. that the meeting would not occur and that N.R. could leave.

29. Despite the July IEP meeting and N.R.'s request for an impartial hearing, by September 5, 2006, the first day of the 2006-2007 school term for New York City Public Schools, Defendants had failed to offer a placement for T.R.

30. On September 7, 2006, the CSE called N.R. and when N.R. returned the call that day, the CSE attempted to hold an IEP meeting over the phone.[2] N.R. told the CSE that she had not received a letter informing her of a meeting and the CSE rescheduled the meeting for September 15, 2006.

31. T.R. began attending the Rebecca School on September 13, 2006.

32. N.R. attended the CSE meeting on September 15, 2006. At that time, the CSE informed N.R. that classes of six children are not permitted to have paraprofessionals, so in order to maintain T.R. in a 6:1 class, T.R. could not have a paraprofessional.

---

[2] When a CSE is planning to conduct a meeting concerning a student's IEP, "the parent must receive notification in writing at least five days prior to the meeting." 8 NYCRR 200.5(c)(1); see also 34 C.F.R. 300.322(a)(1) (stating that each public agency has a responsibility to notify parents "early enough to ensure that they will have an opportunity to attend").

33. Defendants' CSE provided N.R. with an inappropriate placement for T.R. on September 19, 2006: P. 771 at P. 329. When N.R. visited the school, she learned that the coordinator of the autism program—who took N.R. on a tour—was unfamiliar with issues and concepts central to instructing autistic children. The class T.R. was to be placed in had opened just that week, and it contained three (3) non-verbal children whose learning needs were different from T.R., who is verbal.

34. At the impartial hearing on November 9, November 28, December 6, 2006 and January 12, 2007, Defendants conceded their failure to provide FAPE but set forth instead that N.R. was not entitled to tuition reimbursement.

35. After hearing testimony over four (4) days from both N.R. and Defendants' representatives, in a decision dated March 12, 2007, the Impartial Hearing Officer ("IHO") found that although Defendants conceded their failure to provide FAPE, the Rebecca School was not an appropriate placement for T.R. Attached hereto as Exhibit A is a copy of the Decision of the Impartial Hearing Officer dated March 12, 2007. The IHO concluded that because T.R.'s former psychiatrist had diagnosed T.R. with PDD-NOS, not autism, in 2005, the Rebecca School was not an appropriate placement because it was a school for children with autism. (Id. at 10-11.) Having reached that decision, the IHO did not consider whether equitable considerations favored N.R.'s claim. (Id. at 11.)

36. N.R. appealed the impartial hearing officer's ruling to the New York State Review Office ("SRO") on April 19, 2007.

37. In a decision dated July 2, 2006, the SRO annulled IHO's decision to the extent it found that N.R. failed to establish the appropriateness of the Rebecca School, finding that the IHO improperly relied upon an outdated opinion from T.R's former psychiatrist when even

Defendants' CSE classified T.R. as autistic. Attached hereto as Exhibit B is the Decision and Order of the SRO dated July 2, 2006. The SRO held that the Rebecca School "was an appropriate placement for [N.R.'s] son for the 2006-2007 school year...." (Id., at 14.)

38. In spite of the fact that N.R. provided Defendants' with 10-day notice that she placed T.R. in the Rebecca School, SRO sustained the dismissal of N.R.'s claim, concluding that "equitable considerations do not support [N.R.'s] request for payment of [T.R's] tuition costs." (Id., at 16.) The SRO committed an error of law. The SRO improperly relied upon N.R.'s investigation of the Rebecca School without considering that Defendants failed to offer any public school placement. (Id., at 15-16.)

## CAUSES OF ACTION

39. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 38.

40. Defendants' failure to offer Plaintiffs an educational program or placement, deprived them of their right to a free appropriate public education under IDEA, 20 U.S.C. § 1400, et seq., and the regulations promulgated thereunder.

41. Defendants' failure to offer Plaintiffs an educational program or placement deprived them of their rights under Section 504 of the Rehabilitation Act.

42. Defendants have violated the rights of the Plaintiffs under New York State Education Law §§4401, 4404 and 4410 and Part 200 of the Regulations of the New York State Commissioner of Education, 8 N.Y.C.R.R. § 200.

**RELIEF**

a.  Issue a judgment requiring Defendants to pay the cost of the Rebecca School for the 2006-2007 school year, including N.R.'s non-refundable $2,000 deposit, which totaled $72,500;

b.  Issue a judgment that Defendants' failure to provide a free and appropriate public education violates the Plaintiffs' rights under Section 504, the ADA, the IDEA, and New York Education Law.

c.  Award to Plaintiffs their costs and attorneys fees; and

d.  Grant such other and further relief as may be appropriate.

Dated: October 30, 2007
New York, New York

Respectfully submitted,

_____
Caroline J. Heller (CH-8814)
*Greenberg Traurig, LLP*
The MetLife Building
200 Park Ave.
New York, New York
(212) 801-9200

-and-

Matthew Lenaghan (ML-8603)
Kim Madden (KM-3570)
*Advocates for Children*
151 W. 30th Street, 5th Floor
New York, NY 10001
(212) 947-9779