**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| N.R., N.R. on behalf of T. R., | : |
| | : |
| Plaintiff, | : |
| v. | : No. 1:07 Civ. 9648 |
| | : |
| THE DEPARTMENT OF EDUCATION OF THE | : |
| CITY SCHOOL DISTRICT OF THE CITY OF | : (BSJ/DCF) |
| NEW YORK, a/k/a, | : |
| THE BOARD OF EDUCATION OF THE CITY | : |
| SCHOOL DISTRICT OF THE CITY OF NEW | : |
| YORK, and JOEL KLEIN, in his official capacity as | : |
| Chancellor of the New York City School District, | : |
| | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

GREENBERG TRAURIG, LLP
*Attorneys for Plaintiff N.R., N.R. on behalf of T.R.*
THE METLIFE BUILDING
200 PARK AVE. - 15TH FLOOR
NEW YORK, NEW YORK 10166

---

MAIN NO.: (212) 801-9200
FACSIMILE NO.: (212) 801-6400
www.gtlaw.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES............................................................................ii

INTRODUCTION ...........................................................................................1

STATEMENT OF FACTS...............................................................................2

    I.      The Mother Cooperates with The Department
           To Find an Appropriate Placement for T.R. ........................................2

    II.     The Impartial Hearing Officer and the State Review Officer
           Erroneously Denied N.R. Tuition Reimbursement .............................6

ARGUMENT....................................................................................................7

    I.      Standard of Judicial Review...............................................................7

    II.     Because the Department Failed to Provide a FAPE,
           Equitable Considerations Favor T.R.'s Mother Because She Cooperated..............8

    III.    The Department Admitted A Failure to A Provide FAPE,
           And T.R.'s Mother Cooperated, Thus The SRO Was Incorrect In
           Concluding That Equitable Considerations Precluded Reimbursement................10

    IV.    The SRO's Reasons For Denying Tuition
           Reimbursement Ignored the Uncontested facts And The Law.............................11

CONCLUSION ..............................................................................................15

TABLE OF AUTHORITIES............................................................................ii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.C. ex. rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.,*
    No. 06 Civ. 4238 (CLB), 2007 WL 1259145 (S.D.N.Y. April 27, 2007)............................9, 11

*Bettinger v. N.Y.C. Bd. of Educ.,*
    No. 06 CV 6889, 2007 WL 4208560, *9 (S.D.N.Y. Nov. 20, 2007).........................................10

*Carmel Cent. Sch. Dist. v. V.P.,*
    373 F. Supp. 2d 402 (S.D.N.Y. 2005) ...........................................................................................9

*Frank G. v. Bd. of Educ. of Hyde Park,*
    459 F.3d 356 (2d Cir. 2006) ...........................................................................................................8

*Gabel v. Bd. of Education of the Hyde Park Cent. Sch. Dist.,*
    368 F. Supp. 2d 313 (S.D.N.Y. 2005) ...................................................................................passim

*Grim v. Rhinebeck Cent. Sch. Dist.,*
    346 F.3d 377 (2d Cir. 2003) ...........................................................................................................8

*Lillbask ex rel. Maulclaire v. State of Conn. Dept. of Educ.,*
    397 F.3d 77 (2d Cir. 2005) .........................................................................................................7, 8

*M.V. v. Shenendehowa Cent. Sch. Dist.,*
    No. 1:06-CV-0571 (LEK/RFT), 2008 WL 53181 (N.D.N.Y. Jan. 2, 2008) .........................passim

*Sch. Comm. of Burlington v. Dep't of Educ.,*
    471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ........................................................8, 9, 10

*Warren G. v. Cumberland County Sch. Distr.,*
    190 F.3d 80 (3d Cir. 1999) .............................................................................................................9

**Statutes**

20 U.S.C. § 1400(d)(1)(A).......................................................................................................................8

20 U.S.C. § 1415(i)..................................................................................................................................8

**INTRODUCTION**

Plaintiff N.R. (the "Mother") is the mother of T.R., a seven year old New York City resident. The Defendants, the Department of Education, *et al.* (the "Department")[1] classified T.R. as autistic, and concedes that it failed to provide T.R. with a free and appropriate public education ("FAPE") for the 2006-2007 school year, as is required by the Individuals with Disabilities Education Act (the "IDEA"). To ensure that her child received the appropriate education to which he is entitled, T.R.'s Mother enrolled T.R. in the Rebecca School, a private school that a New York State Review Officer ("SRO") ruled is an appropriate placement given T.R.'s special needs. (Exh. "A").[2]

This action, in the practical form of an appeal from an administrative decision, relates to the Mother's attempt to obtain reimbursement for the costs of obtaining an appropriate education for her son. The SRO correctly ruled in a decision dated July 2, 2007 that the Department failed to provide T.R with a FAPE, and that the Rebecca School was an appropriate placement for T.R. The SRO, nevertheless, refused to sanction reimbursement, finding that "equitable considerations" did not support the Mother's request that the Department pay the private school tuition costs. (Exh. "A"). The SRO's ruling in this regard is incorrect.

The United States Supreme Court has declared that under the IDEA, school districts are required to reimburse parents retroactively for private school tuition where, as here, (1) the school district fails to provide a FAPE, (2) the private school selected by the parent is an appropriate placement, and (3) the equitable considerations favor granting the relief sought. Where, as in this case, the uncontested facts demonstrate the Department failed to provide a

---

[1]    The Department of Education of the City School District of the City of New York, a/k/a, the Board of Education of the City School District of the City of New York, and Joel Klein, in his official capacity as Chancellor of the New York City School District.

[2]    All Exhibits referred to herein are attached to the Declaration of Caroline J. Heller, submitted herewith.

FAPE, the parent's cooperation with the Department by participating at Committee on Special Education ("CSE") meetings and communicating her concerns constitute the equitable circumstances that warrant tuition reimbursement. The SRO ignored the uncontested evidence in the record and misapplied the law in determining that equitable considerations were not met. The SRO's ruling should, therefore, be vacated as a matter of law, and the Mother should be reimbursed for her tuition and other costs related to this proceeding.

**STATEMENT OF FACTS**

**I.     The Mother Cooperates with The Department
       To Find an Appropriate Placement for T.R.**

In determining the manner in which a student with special needs is to be educated, school districts are required to prepare and recommend, with the parental assistance, an Individual Education Program or "IEP". In an October 17, 2005 IEP, the New York City CSE classified five year old T.R. with a speech and language impairment and recommended, as appropriate, a special class in a community school with related educational and remedial services. (Exh. "V"). At the time the CSE prepared the IEP for T.R., it was provided a letter dated July of 2005 from T.R.'s then psychiatrist diagnosing T.R. with Pervasive Developmental Disorder-Not Otherwise Specified. (Exh. "D").

Several months later, in March 2006, T.R. was examined by a neurologist who advised T.R.'s Mother that T.R.'s behavior might arise from the fact that T.R. may fall into the autism spectrum. (Exh. "C", Tr. at 228:1-23). Accordingly, T.R's Mother sought a clinical psychological evaluation from Dr. Jordana Skurka. (*Id.*, Tr. at 228:24-229:21). Dr. Skurka tested T.R. in March and April, and diagnosed T.R. with autism, recommending, *inter alia*, a

special therapeutic school for children with autistic spectrum disorders with a small classroom teacher ratio. (*Id.*, Tr. at 306:25-307:22; Exh. "BB").[3]

In late April, 2006, T.R.'s Mother requested that the CSE reopen T.R.'s case and recommend an appropriate placement for T.R. for the 2006-2007 school year given his more recent diagnoses. (Exh. "CC"). The Mother notified the CSE she had obtained an evaluation and would provide a written version when it was completed. (*Id.*).

As a result of the evaluations, T.R.'s Mother began to investigate alternative public and State-Approved private school placements for T.R. (Exh. "C" Tr. at 241:1-246:5, 307:24-308:8). T.R.'s Mother also investigated the Rebecca School, a Non-State-Approved therapeutic day school in Manhattan, New York for children with neuro-developmental disorders of relating and communicating, including pervasive developmental disorder and autism. (*Id.*, Tr. at 245:4-23). After taking a tour of the Rebecca School on April 5, 2006, T.R.'s Mother submitted an application on April 19, 2006. (*Id.*, Tr. at 73:1-5; 274:23-276:1, 277:7-9.) On May 12, 2006, T.R.'s Mother visited the Rebecca School with T.R. for an interview and a videotaped functional-emotional assessment.[4] (*Id.*, Tr. at 79:11-80:3; 281:2-11). In mid-May, the Rebecca School accepted T.R. (*Id.*).

In order to reserve a spot for T.R. for the 2006-2007 school year, T.R.'s Mother executed a contract with the Rebecca School on May 30, 2006 and provided the Rebecca School a $2,000, reduced deposit. (*Id.*, Tr. at 152:10-153:20; 330:22-331:21). T.R.'s mother paid the deposit because she "needed to know that [T.R.] had a placement for September. And [N.R.] knew that

---

[3]    Dr. Skurka provided a final written evaluation to T.R.'s Mother on May 7, 2006. (Exh. "C"., Tr. at 306:25-307:22; At this time, T.R. attended Great Commission Christian School, which N.R. paid for. (*Id.*, Tr. at 272:20-273:4).

[4]    There was no written report of T.R.'s functional emotional assessment because this assessment is not a full evaluation, but there was a written coding of the results for the functional assessment scale. (*Id.*, Tr. at 79:11-80:3; 436:21-438:10).

talking to all the parents that [the Department] sometimes takes a long time to give [a child] a placement. So [she] just needed to be reassured that [N.R.] had somewhere for T.R. to go." (*Id.*, Tr. at 250:5-13).

Prior to reserving T.R.'s spot at the Rebecca School, on May 25, 2006, T.R.'s Mother provided the Department CSE with Dr. Skurka's evaluation. (Exh. "AA"). On June 2, 2006, The Department notified T.R.'s Mother of a new CSE meeting set for June 12, 2006. (Exh. "II"). The Department had also mailed a notice to T.R.'s Mother that the Department had scheduled an evaluation of T.R. for May 31, 2006 (Exh. "EE"). T.R.'s Mother did not attend the Department-scheduled evaluation because she did not receive the notice, and T.R.'s Mother understood the Department did not pursue its own evaluation because T.R. had already been evaluated by Dr. Skurka. (Exh. "C", Tr. at 282:11-21, 338:16-340:7). The Department did not object to the fact that its own staff did not evaluate T.R. (*Id.*)

At the June 12, 2006 CSE meeting, based upon Dr. Skurka's diagnosis, T.R.'s Mother requested that T.R.'s classification be changed from speech and language impairment to autism and that he receive speech–language therapy and occupational therapy during the summer of 2006. (*Id.*, Tr. at 286:14-288:13). Despite Dr. Skurka's diagnosis, the Department requested from T.R.'s Mother an additional medical diagnosis of autism before it would consider changing T.R.'s classification. (*Id.*, Tr. at 232:14-25). T.R.'s Mother agreed to obtain and provide to the CSE a medical diagnosis. (*Id.*, Tr. at 288:21-23). At the CSE meeting, T.R.'s Mother also advised the CSE that she was interested in a non-public placement for T.R. (*Id.*, Tr. at 396:21-397:24).

In late June of 2006, N.R. provided the CSE with the requested medical diagnosis of autism. (*Id.*, Tr. at 232:1-25; Exhs. "Y", "Z"). The Department's CSE convened a new IEP

4

meeting on July 6, 2006, during which the CSE changed T.R.'s classification from speech and language impaired to autism and developed an IEP and recommendations for T.R. for the summer. (Exh. "C", Tr. at 234:18-235:17; 303:1-16; 304:22-25; 451:8-453; Exh. "T"). Despite the CSE's recommendation, the Department failed to offer any summer service placement for T.R. (*Id.*) During the July 6, 2006 CSE meeting, T.R.'s Mother expressed concern about a specific school placement for T.R. for the 2006-2007 school year, but the CSE did not discuss any such placement. (*Id.*, Tr. at 234:18-235:17; 451:8-453).

On August 11, 2006, with no placement yet offered for the 2006-2007 school year, T.R.'s Mother executed a revised enrollment contract with the Rebecca School reflecting a $72,500 tuition of which T.R.'s Mother would seek reimbursement from the Department. (Exh. "J"). The contract provided it could be cancelled on or before August 30, 2006, if the Department offered an appropriate placement. (*Id.*). But because the Department had failed to offer an appropriate placement for T.R. to obtain a free education, by letter dated August 24, 2006, T.R.'s Mother notified the Department of her decision to enroll T.R. in the Rebecca School and that she sought tuition reimbursement. (Exh. "D"). T.R.'s Mother requested an impartial hearing seeking payment for tuition and transportation. (*Id.*).

Apparently in response, and having never offered a placement of T.R., the CSE notified T.R.'s Mother of an educational planning conference scheduled for August 31, 2006. (Exh. "JJ"; Exh. "C", Tr. at 234:3-22).[5] Having been notified, T.R.'s Mother arrived at the CSE to participate in the meeting, but no CSE personnel knew the reason she was attending and the meeting was not held. (Exh. "C", Tr. at 235:23-236:12). Despite this, a school psychologist, John Smolinski, testified at the Impartial Hearing that he met with T.R.'s Mother that day and

---

[5]    At the Impartial Hearing, T.R.'s Mother recalled going to the CSE meeting on August 30, but the CSE's notes reflect she attended on August 31, the date that the CSE conference had been scheduled. (Exh. "HH").

they called the placement officer, who told him that no placement had been offered for the 2006-2007 school year. (Exh. "C", Tr. at 402:18-403:13; Exh. "HH"). The CSE allegedly called T.R.'s representative that day and tried to reschedule a meeting but T.R.'s representative advised the CSE that T.R. needed a school and that T.R. was being enrolled in an appropriate private school.

On September 7, 2006, without any prior notice, the CSE called T.R.'s Mother and attempted to hold a telephonic IEP meeting. (Exh. "C", Tr. at 236:16-237:9).  T.R.'s Mother rescheduled the meeting for September 15, 2006. (*Id.*)  T.R. began attending the Rebecca School on September 13, 2006. (*Id.*, Tr. at 255:1-3).  T.R.'s Mother attended the CSE meeting on September 15, 2006 during which an IEP for the 2006-2007 school year was developed, removing T.R.'s paraprofessional, to which T.R.'s Mother objected. (*Id.*, Tr. at 237:25-238:17, Exh. "HH".)[6]  On September 19, 2006, after the school year had already commenced, the CSE provided an inappropriate placement for T.R.: P. 771 at P. 329. (Exh. "C". Tr. at 311:20-314:3; Exh. "H").  T.R.'s Mother visited the school, which she found to be inappropriate and rejected the placement. (*Id.*, Tr. at 244:15-245:3; 312:17-313:23).

## II.    The Impartial Hearing Officer and the State Review Officer Erroneously Denied N.R. Tuition Reimbursement

To obtain tuition reimbursement, T.R.'s Mother pursued an impartial hearing before an Impartial Hearing Officer designated by the Department. During the impartial hearing, the Department conceded a failure to provide a FAPE. (Exh. "C", Tr. at 26:18-28:14). In a decision dated March 12, 2007, the Impartial Hearing Officer ("IHO") found that although the Department failed to provide a FAPE, the Rebecca School was not an appropriate placement for

---

[6]    The Department objected to the admission of the September 15, 2006 IEP at the hearing because they had conceded that failed to provide FAPE, thus claimed it was irrelevant. Other exhibits reflect that the IEP meeting took place to formulate a plan for the 2006-2007 school year. (Exhs. "H", "HH").

T.R. (Exh. "B", pp. 7-11). The IHO did not consider whether equitable considerations favored reimbursement. (*Id.* at 11.)

T.R.'s Mother appealed the IHO's ruling to the State SRO, and in a decision dated July 2, 2007, the SRO annulled the IHO's decision and held that the Rebecca School "was an appropriate placement for [N.R.'s] son for the 2006-2007 school year...." (*Id.,* at 14.) However, the SRO refused tuition reimbursement, concluding that "equitable considerations do not support [the] request for payment of [T.R.'s] tuition costs" because: (1) T.R.'s Mother did not inform the CSE that she had applied to, or placed a deposit with, the Rebecca School; (2) T.R.'s Mother did not provide the CSE with information concerning the evaluation performed at the Rebecca School, or its program, so that the CSE could model it; (3) T.R.'s Mother did not express dissatisfaction with the recommendations at the July 6, 2006 CSE meeting, (4) T.R.'s Mother did not bring T.R. to an evaluation appointment, and (5) T.R.'s representative declined the CSE's request on August 31, 2006 to reschedule a CSE meeting that day. (*Id.* at 15-16.)

T.R.'s Mother filed the Complaint in this Court appealing the SRO's decision on October 30, 2007. (Compl.) The present motion for summary judgment follows.

## ARGUMENT

### I.   Standard of Judicial Review

"In an IDEA action, a motion for summary judgment turns on 'whether the administrative record, together with any additional evidence, establishes that there has been compliance with the IDEA's processes and that the child's educational needs have been appropriately addressed.'" *M.V. v. Shenendehowa Cent. Sch. Dist.,* No. 1:06-CV-0571 (LEK/RFT), 2008 WL 53181, *3 (N.D.N.Y. Jan. 2, 2008) (quotations omitted). "A summary judgment motion in an IDEA case is, more accurately, 'an appeal from an administrative determination, not a summary judgment.'" *Id.* (quoting *Lillbask ex rel. Maulclaire v. State of Conn. Dept. of Educ.,* 397 F.3d 77, 83 n. 3 (2d

Cir. 2005)).    "Administrative rulings by hearing and review officers are 'subject to "independent" judicial review.'" *Id.* (quotations and citations omitted).  Although administrative rulings are to be "given due weight" by this Court, the Court should "make an independent judgment, based on the preponderance of the evidence, as to whether that evidence supports the findings and conclusions of the hearing officer." *Id.* (citing *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380-81 (2d Cir. 2003).    In particular, this Court has "broad discretion in considering equitable factors relevant to fashioning relief." *M.V.*, 2008 WL 53181, at *5 (quotation omitted); *see* 20 U.S.C. § 1415(i)(2)(C)(iii)(2006).

## II.    Because the Department Failed to Provide a FAPE, Equitable Considerations Favor T.R.'s Mother Because She Cooperated

The IDEA was established "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs...."    20 U.S.C. § 1400(d)(1)(A); *see Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 367, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).  Where, as in this case, "a state fails in its obligation to provide a free appropriate public education to a handicapped child, the parents may enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006) (citing *Burlington*, 471 U.S. at 370, 105 S.Ct. 1996).[7]    In determining whether parents are entitled to reimbursement, the Supreme Court established a three pronged test: (1) was the IEP proposed by the school district inappropriate; (2) was the private placement appropriate to the child's needs; and (3) whether equitable considerations favor granting the relief. *See Burlington*, 471 U.S. at 370, 374, 105 S.Ct. 1996.

---

[7]    When a parent is successful in its action under the IDEA, the parent is entitled to costs and attorneys fees. *See* 20 U.S.C. § 1415(i)(3).

Where the Department fails to provide a FAPE, as it admitted here, the equities inherently favor the parent that attempts to provide an appropriate education elsewhere. *Gabel v. Bd. of Education of the Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 329 (S.D.N.Y. 2005) (holding that "the District's utter abdication of its responsibility to provide... FAPE... and the law's imposition of this duty on the District is so well-settled--that... [even where the parents have taken advantage of the District's lapses] the equities favor the parents"); *M.V.*, 2008 WL 53181, at *5 (holding that "it would be inequitable to reward the District for its admitted failure to comply with IDEA" by denying tuition reimbursement). This is especially true in cases, such as this one, where "there was cooperation and communication on the parents' part, and the hearing request was timely." *A.C. ex. rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, No. 06 Civ. 4238 (CLB), 2007 WL 1259145, at *6 (S.D.N.Y. April 27, 2007) (quotation omitted).. *See also M.V.*, 2008 WL 53181 at *5; *Gabel*, 368 F.Supp.2d at 329 (finding tuition reimbursement proper where District failed to provide FAPE and parent cooperated and communicated with District and reviewed placement offered by the District). This underlying policy rationale for requiring the Department to reimburse tuition when it admits failing to provide a FAPE, even where the parent fails to cooperate, is that "[t]he conduct of parents should not be permitted to defeat the purpose of the [IDEA]," *Warren G. v. Cumberland County Sch. Distr*, 190 F.3d 80, 86 (3d Cir. 1999), which "was intended to give handicapped children both an appropriate education and a free one...." *Burlington*, 471 U.S. at 372, 105 S.Ct. 1996.

Thus, only where parents purposefully frustrate the Department's placement system with their failure to cooperate and communicate, and to review recommended district placements, will the Court find that the equities do not favor tuition reimbursement. *See Carmel Cent. Sch. Dist. v. V.P.*, 373 F. Supp. 2d 402 (S.D.N.Y. 2005) (where, *inter alia*, parents failed to provide

adequate records, evaluations, refused to observe or consider public school alternatives); *Bettinger v. N.Y.C. Bd. of Educ.*, No. 06 CV 6889, 2007 WL 4208560, *9 (S.D.N.Y. Nov. 20, 2007) (where parents unilaterally enrolled their child in a private school and attended a meeting to prepare an IEP, but then failed to visit the district's recommended placements and failed to return to CSE to review their status or to express dissatisfaction with their referrals). Here, T.R.'s Mother cooperated and communicated with the Department throughout the process of attempting to ensure her own child of a FAPE; the Department's failure at every level to provide a FAPE entitled her to obtain an appropriate education for her child for which she is now entitled to reimbursement.

**III.    The Department Admitted A Failure to A Provide FAPE, And
T.R.'s Mother Cooperated, Thus The SRO Was Incorrect In
<u>Concluding That Equitable Considerations Precluded Reimbursement</u>**

In this case, the only issue for the Court to decide is whether the SRO was correct in determining that the equitable considerations precluded tuition reimbursement. The Department admitted their failure to provide T.R. a FAPE, which is the very responsibility of the Department under the law, and is the very purpose of the IDEA. *Burlington*, 471 U.S. at 372, 105 S.Ct. 1996. When the Department fails in its responsibility to comply with the IDEA and provide a FAPE and the private school placement chosen by the parent is appropriate, as in this case, "it would be inequitable to reward the [Department] for its admitted failure to comply with IDEA" by denying tuition reimbursement. *M.V.*, 2008 WL 53181 at *5; *see Gabel*, 368 F. Supp. 2d at 329. For this reason alone, the Court should enter summary judgment in favor of T.R. and T.R.'s Mother as the equitable considerations favor tuition reimbursement for the appropriate education provided T.R. by the Rebecca School as a matter of law.

Any question concerning whether summary judgment is appropriate is put to rest by the uncontested facts proving that T.R.'s Mother cooperated with the Department; thus the equities favor tuition reimbursement. *See A.C.*, 2007 WL 1259145, at *6; *M.V.*, 2008 WL 53181 at *5; *Gabel*, 368 F.Supp.2d at 329. T.R.'s Mother timely requested that T.R.'s case be re-opened; for a recommendation for an appropriate educational program for the 2006-2007 school year after more recent evaluations of her son had been completed; attended every meeting scheduled by the CSE in 2006, provided the CSE with every document it requested; requested an appropriate public school placement in the July CSE meeting; attended the belated September 2006 IEP meeting; visited the public school placement the Department ultimately offered well after the start of the 2006-2007 school year on September 19, 2006; and timely filed a notice of hearing. (Exhs. "D", "CC", "HH", "Y,", "Z"; Exh. "C" Tr. at 234:3-238:4, 244:15-245:3, 286:14-288:23, 396:21-297:24, 311:20-314:3, 451:8-453). These uncontested facts prove parental cooperation a matter of law. *See A.C.*, 2007 WL 1259145, at *6; *M.V.*, 2008 WL 53181 at *5; *Gabel*, 368 F. Supp. 2d at 329.

## IV.    The SRO's Reasons For Denying Tuition Reimbursement Ignored the Uncontested facts And The Law

Ignoring the uncontested evidence of cooperation, as well as the Department's admission that it failed to provide T.R. a FAPE, the SRO held that the equities did not favor T.R.'s Mother because, *inter alia*: T.R.'s Mother did not inform the CSE that she had applied for a spot, or placed a deposit to secure that spot, for T.R. at the Rebecca School; and T.R.'s Mother did not provide the CSE with information concerning the evaluation performed at the Rebecca School, or its program, so that the CSE could model it. (Exh. "A", pp. 15-16). The law does not support the SRO's denial of tuition reimbursement for these reasons because these acts by T.R.'s Mother did not purposefully frustrate the Department's attempt to provide a FAPE, especially taking into

11

account that the Department admitted it had failed to do so and the uncontroverted evidence that

T.R.'s Mother's cooperated. Nothing in the law requires a parent to create the FAPE for the

Department. The uncontested evidence is that T.R.'s Mother applied to the Rebecca School and

placed the deposit only to secure a spot for T.R. in some school for the 2006-2007 school year in

case the Department failed to provide an appropriate placement. (Exh. "C", Tr. at 250:5-13). In

any event, T.R.'s Mother advised the Department of T.R.'s enrollment in the Rebecca School as

early as August 24, 2006, thus the Department was aware of the enrollment during the

September 15, 2006 IEP meeting. (Exh. "D"). The Department could have formulated an

appropriate IEP based upon its program if, as alleged by the SRO, knowledge about the program

would have truly made a difference, but the Department still failed to provide T.R. a FAPE.[8]

This case is similar to *M.V.*, where the parent did not tell the District she was looking at

private schools, and unilaterally placed the child in a private school. *M.V.*, 2008 WL 53181 at

*1. The Court found that the equities favored tuition reimbursement because: the district failed

to provide FAPE; and the parent had cooperated with the district by attending CSE meetings,

communicating concerns to the CSE, working with the district in finding a placement for the

child, and investigating out-of-district placements offered by the district. *Id.* The Court held that

the parent's conduct with respect to the placement in the private school was that of "a concerned

parent who took great efforts to find an appropriate placement.... [and her] actions were not

unreasonable, given her legitimate concerns about the District's ability to make an appropriate

placement.... Moreover, *it would be inequitable to reward the District for its admitted failure to*

---

[8] Moreover, the Rebecca School never performed a constructive "evaluation" reduced to writing, contrary to the SRO's claim. T.R.'s functional emotional assessment--which was not a full developmental evaluation--was not reduced to a written report but merely a written coding of the results for the functional assessment scale. (Exh. "C", Tr. at 79:11-80:3; 436:21-438:10). Further, school psychologist Mr. Smolinski indicated that the Rebecca School functional emotional assessment would not have assisted The Department (*Id.*, Tr. at 399:19-400:1).

*comply with IDEA.*" *Id.* at *5 (emphasis added). Similarly here, T.R.'s Mother acted only as a concerned parent in securing a spot for possible placement at the Rebecca School should Department fail to offer her a public school placement that could appropriately address T.R.'s autism. She consistently worked with the Department, communicated her concerns, and cooperated in every effort to develop an IEP and to find an appropriate public school for T.R. for the 2006-2007 school year. Under the circumstances here, it would also be "inequitable to reward [The Department] for [their] admitted failure to comply with IDEA", *id.*, by denying T.R.'s Mother. tuition reimbursement.

The SRO also denied tuition reimbursement because: T.R.'s Mother did not express dissatisfaction with the recommendations at the July 6, 2006 CSE meeting; T.R.'s Mother did not attend an evaluation appointment; and T.R.'s representative would not reschedule an IEP appointment on August 31, 2006 when T.R.'s Mother had already attended a meeting that very day. (Exh. "A", p. 16). The SRO's findings, not entirely supported by the record, do not weigh against tuition reimbursement under the law because these alleged acts did not purposefully prevent the Department from providing a FAPE, especially when viewed in the light of T.R.'s Mother's consistent cooperation.

First, the purpose of the July 2006 CSE meeting, and in spite of T.R.'s Mothers' request to discuss a public school placement for T.R. for the 2006-2007 school year, was limited to the discussion of placement and services T.R. for the summer. (Exh. "C", Tr. at 234:18-235:17; 303:1-16; 451:8-453). In fact, it was the Department, and not T.R.'s Mother who failed to address the concerns for appropriate placement for T.R. until September, 2006. In September 15, 2006, when an IEP for the 2006-2007 school year was developed, it was inappropriate--the Department removed T.R.'s paraprofessional--and the placement provided for T.R. was similarly

13

inappropriate, as the Department concedes. (Exh. "C", Tr. at 303:113-16; 304:22-25). After this, T.R.'s Mother timely objected, and had previously filed a request for a hearing for the Department's failure to offer a placement prior to the start of the school year. (Exhs. "D", "HH"). Second, the SRO's strained reasoning faults T.R.'s Mother for not attending the evaluation appointment in May of 2006 but she did this only because she had obtained a private evaluation for T.R., which she provided to the Department, and the Department accepted and used in the preparation of an IEP. (Exh. "AA"). Third, the SRO's findings concerning T.R.'s representative are without merit when considering the equities. On the day in question, T.R.'s Mother was already attempting to attend a scheduled meeting that the CSE not only then failed to conduct, but of which it contended it was unaware despite its previous notice of a meeting. (Exh. "JJ"; Exh. "C", Tr. at 235:23-236:12). The Department's failure to hold a scheduled meeting and ignorance of the purpose of the meeting is an indicia of the Department's lack of cooperation, not T.R.'s Mother's for her representative's alleged failure to reschedule the meeting that day. Nonetheless, T.R.'s Mother cooperated with the CSE by scheduling, and attending, a September IEP meeting a mere two weeks later. (Exh. "C", Tr. at 237:25-238:17, ).

In short, T.R.'s Mother's conduct throughout was consistent with the policies the IDEA seeks to promote. T.R.'s Mother cooperated with the Department to find a free and appropriate public school placement for T.R. for the 2006-2007 school year, but despite her cooperation--and her persistence to get the Department to act on T.R.'s case--the Department failed to provide any placement for the summer and then admittedly only provided an inappropriate placement after the school year had begun. Where, as here, T.R.'s Mother cooperated with the Department in an effort to develop an IEP and find an appropriate public school placement for T.R., the Department failed to provide FAPE, and the Rebecca School is appropriate, it is undeniable that

14

policy of the IDEA requires a finding that the equities weigh in favor of tuition reimbursement. *M.V.*, 2008 WL 53181, at \*5; *see Gabel*, 368 F.Supp.2d at 329. Accordingly, the SRO was incorrect as a matter of law in finding that equitable considerations precluded tuition reimbursement. *See M.V.*, 2008 WL 53181 at \*5.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiff's Motion for Summary Judgment finding entitlement to tuition reimbursement totaling $72,500 for the 2006-2007 school year, reversing the decision of the State Review Officer to the extent that it denied tuition reimbursement, and order that T.R.'s Mother is entitled to reasonable attorneys fees and expenses, and any further relief as the Court deems just and proper.

Dated: March 17, 2008
        New York, New York

                                        Respectfully submitted,

                                        Caroline J. Heller (CH-8814)
                                        *Greenberg Traurig, LLP*
                                        The MetLife Building
                                        200 Park Ave.
                                        New York, New York
                                        (212) 801-9200

                                        -and-

                                        Matthew Lenaghan (ML-8603)
                                        Kim Madden (KM-3570)
                                        *Advocates for Children*
                                        151 W. 30th Street, 5th Floor
                                        New York, NY 10001
                                        (212) 947-9779

15