**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| N.R., N.R. on behalf of T. R., | : |
| | : |
| Plaintiff, | : |
| v. | :    No. 1:07 Civ. 9648 |
| | : |
| THE DEPARTMENT OF EDUCATION OF THE | : |
| CITY SCHOOL DISTRICT OF THE CITY OF | :    (BSJ/DCF) |
| NEW YORK, a/k/a, | : |
| THE BOARD OF EDUCATION OF THE CITY | : |
| SCHOOL DISTRICT OF THE CITY OF NEW | : |
| YORK, and JOEL KLEIN, in his official capacity as | : |
| Chancellor of the New York City School District, | : |
| | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

GREENBERG TRAURIG, LLP
*Attorneys for Plaintiff N.R., N.R. on behalf of T.R.*
THE METLIFE BUILDING
200 PARK AVE. - 15TH FLOOR
NEW YORK, NEW YORK 10166

———————

MAIN NO.: (212) 801-9200
FACSIMILE NO.: (212) 801-6400
www.gtlaw.com

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES...................................................................................ii

STATEMENT OF FACTS...................................................................................2

     I.     T.R's Mother Cooperates with The Department ....................................................2

     II.    T.R's Mother is Erroneously Denied Tuition
           Payment...........................................................................................5

ARGUMENT...................................................................................6

     I.     Because the Department Failed to Provide a FAPE, The Equitable
           Considerations Favor Granting Tuition Payment to the T.R.'s
           Cooperative Mother ....................................................6

     II.    T.R.'s Mother Provided 10 Day Written Notice to the Department......................10

     III.   The Department Did Not Require T.R.'s Mother to Attend a
           Department Evaluation .......................................................11

CONCLUSION ...................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*A.C. v. Bd. of Educ.*, No. 06 Civ. 4238 (CLB), 2007 WL 1259145
(S.D.N.Y. April 27, 2007) ...................................................................7, 8

*Berger v. Medina City Sch. Dist.*, 348 F.3d 513 (6th Cir. 2003) ...................................11

*Bettinger v. N.Y. C. Bd. of Educ.*, No. 06 CV 6889, 2007 WL 4208560
(S.D.N.Y. Nov. 20, 2007)....................................................................8, 9

*Frank G. v. Bd. of Educ.,* 459 F.3d 356 (2d Cir. 2006) ...........................................6, 10

*Gabel v. Bd. of Educ.*, 368 F. Supp. 2d 313 (S.D.N.Y. 2005)....................................7, 8

*Jennifer D. v. N.Y.C. Dep't of Educ.*, No. 06 Civ. 15489 (JGK), 2008 WL 857554
(S.D.N.Y. March 31, 2008 ) ...................................................................6

*Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309 (11th Cir. 2003) .......................6, 11

*M.V. v. Shenendehowa Cent. Sch. Dist.*, No. 1:06-CV-0571 (LEK/RFT),
2008 WL 53181 (N.D.N.Y. Jan. 2, 2008) ....................................................7, 8

*P.S. v. Brookfield Bd. of Educ.*, 353 F. Supp. 2d 306 (D.Conn. 2005).........................11

*Petway v. D.C.*, No. Civ. A. 03-1673, 2005 WL 3276349,
(D.D.C. Aug. 10, 2005) .....................................................................10

*Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85
L.Ed.2d 385 (1985)............................................................................6

*Schoenfield v. Parkway Sch. Dist.*, 138 F.3d 379 (8th Cir. 1998) ..............................11

Statutes

20 U.S.C. § 1415(i)(2)(C)(iii)...............................................................6

20 U.S.C. § 1415(i)(2)(C)(iii)(I)(aa)-(bb).....................................................10

The Defendants, the Department of Education, *et al.* (the "Department") conceded in their Memorandum in Support of Motion for Summary Judgment ("Motion") that they failed to provide Plaintiff N.R.'s (the "Mother") autistic child, T.R., with a free and appropriate public education ("FAPE"), as required by the Individuals with Disabilities Act ("IDEA"). The Department also conceded that the private school, in which the Mother placed T.R., when the Department failed to offer any school, was appropriate. Thus, the sole issue for this Court to determine is whether the equities favor the Mother who cooperated with the Department in developing an educational program for T.R., requested a placement from the Department, and eventually placed T.R. in the Rebecca School when the Department failed to offer any school.

The Mother appeals from a decision of the State Review Officer who found that the Rebecca School was an appropriate placement but erroneously held that "equitable considerations" did not support the Mother's request that the Department pay the private school tuition. The SRO was wrong, thus the Department's Motion fails, because (1) the Department failed to offer T.R.'s Mother a placement for her autistic child for the 2006-2007 school year; (2) T.R.'s Mother cooperated with the Department in attempting to develop a FAPE for T.R.; (3) T.R.'s Mother provided the Department with the required 10-day notice that she disagreed with the Individualized Education Program ("IEP") developed for T.R. in July and that she was placing him at the Rebecca School; and (4) T.R.'s Mother visited a school offered to her by the Department well after the start of the school year, which the Department later conceded was inappropriate.

The crux of the Department's argument in its Motion is that the SRO ruled correctly because T.R.'s Mother did not object to T.R.'s IEP at a July meeting. However, this argument is erroneous as a matter of law. T.R.'s Mother was merely required to provide ten (10) days

written notice to the Department that she objected to T.R.'s program and was placing him in the Rebecca School. She complied with this requirement as reflected by the record. The remainder of the Department's arguments, as set forth below, are unavailing.

T.R.'s Mother and T.R., by and through their attorneys, Greenberg Traurig, LLP, respectfully submit this Memorandum of Law in support of their Opposition to the Department's Motion for Summary Judgment.

## STATEMENT OF FACTS

The Mother set forth the facts, *infra*, in her Memorandum of Law in Support of Motion for Summary Judgment, and restates them here in Opposition to the Department's Motion.

## I.    T.R's Mother Cooperates with The Department

When T.R. was five years old, the Department classified T.R. with a speech and language impairment in an October 17, 2005 Individual Education Program ("IEP"). (Exh. "V").[1] Several months later, in March 2006, T.R. was examined by a neurologist who advised T.R.'s Mother that T.R. might fall on the autism spectrum. (Exh. "C", Tr. at 228:1-23). T.R's Mother sought a clinical psychological evaluation, and in March and April, Dr. Jordana Skurka tested T.R. and diagnosed T.R. with autism. (*Id.*, Tr. at 228:24-229:21; 306:25-307:22; Exh. "BB").[2]

In late April of 2006, T.R.'s Mother requested that the Committee on Special Education ("CSE") reopen T.R.'s case and recommend an appropriate placement for T.R. for the 2006-2007 school year given his more recent diagnoses. (Exh. "CC"). She notified the CSE she had obtained an evaluation and would provide a written version when it was completed. (*Id.*).

As a result of the evaluations, T.R.'s Mother began to investigate alternative public and

---

[1] The Department failed to submit all of the exhibits admitted during the Impartial Hearing in support of its Motion. Accordingly, the Mother does so in Opposition to the Motion, attached to the Declaration of Caroline J. Heller dated April 11, 2008, submitted herewith and referred to herein as "Exh."
[2] Dr. Skurka provided a final written evaluation to T.R.'s Mother on May 7, 2006. (Exh. "C", Tr. at 306:25-307:22).

State-Approved private school placements for T.R., including the Rebecca School, a Non-State-Approved therapeutic day school in Manhattan, New York for children with neuro-developmental disorders of relating and communicating, including autism. (Exh. "C" Tr. at 241:1-246:5, 307:24-308:8; Exh. "E"). After taking a tour of the Rebecca School on April 5, 2006, T.R.'s Mother submitted an application on April 19. (*Id.*, Tr. at 73:1-5; 274:23-276:1, 277:7-9.) T.R.'s Mother visited the Rebecca School with T.R. for an interview and a functional-emotional assessment on May 12, 2006. (*Id.*, Tr. at 79:11-80:3; 281:2-11). In mid-May, the Rebecca School offered T.R. a spot at the school. (Exh. "I").

To reserve a spot for T.R. for the 2006-2007 school year, T.R.'s Mother executed a contract with the Rebecca School on May 30, 2006 and provided a $2,000 reduced deposit in the beginning of June. (*Id.*, Tr. at 152:10-153:20; 330:22-331:21). T.R.'s mother paid the deposit because she "needed to know that [T.R.] had a placement for September. And [the Mother] knew that talking to all the parents that [the Department] sometimes takes a long time to give [a child] a placement. So [she] just needed to be reassured that [the Mother] had somewhere for T.R. to go." (*Id.*, Tr. at 250:5-12).

On May 25, 2006, prior to reserving T.R.'s spot at the Rebecca School, T.R.'s Mother provided the Department's CSE with Dr. Skurka's evaluation. (Exh. "AA"; "BB"). On June 2, 2006, the Department notified T.R.'s Mother of a new CSE meeting set for June 12, 2006. (Exh. "II"). The Department claims that it mailed a notice to T.R.'s Mother scheduling an evaluation of T.R. for May 31, 2006, but she did not receive this notice and, thus, did not attend. (Exh. "EE"; Exh. "C", Tr. at 282:11-21, 338:16-340:7). T.R.'s Mother understood that the Department did not schedule another evaluation because it had Dr. Skurka's evaluation. (*Id.*) The Department did not object to the fact that it did not evaluate T.R. or schedule another evaluation. (*Id.*)

At the June CSE meeting, based upon Dr. Skurka's diagnosis, T.R.'s Mother requested that T.R.'s classification be changed to autism and that he receive services during the summer of 2006. (*Id.*, Tr. at 286:14-288:13). Despite Dr. Skurka's diagnosis, the Department requested an additional medical diagnosis of autism before it would consider changing T.R.'s classification. (*Id.*, Tr. at 232:14-25). T.R.'s Mother agreed to obtain and provide to the CSE a medical diagnosis. (*Id.*, Tr. at 288:21-23). At the CSE meeting, T.R.'s Mother also advised the CSE that she was interested in a non-public placement for T.R. (*Id.*, Tr. at 396:21-397:24).

In late June of 2006, T.R.'s Mother provided the CSE with the requested medical diagnosis of autism. (*Id.*, Tr. at 232:1-25; Exhs. "Y", "Z"). The Department's CSE convened a new IEP meeting on July 6, 2006, at which the it changed T.R.'s classification to autism and developed an IEP and recommendations for T.R. for the summer. (Exh. "C", Tr. at 234:18-235:17; 303:1-16; 304:22-25; 451:8-453:25; Exh. "T"). However, the Department failed to offer any summer services or placement for T.R. (*Id.*) During the July 6, 2006 CSE meeting, T.R.'s Mother expressed concern about a specific school placement for T.R. for the 2006-2007 school year, but the CSE did not discuss any placement. (*Id.*, Tr. at 234:18-235:17; 451:8-453:25).

On August 11, 2006, with no placement yet offered for the school year, T.R.'s Mother executed a revised enrollment contract with the Rebecca School reflecting a $72,500 tuition of which T.R.'s Mother would seek payment from the Department. (Exh. "J"). The contract provided it could be cancelled on or before August 30, 2006, if the Department offered an appropriate placement. (*Id.*). As the Department had failed to offer any placement for T.R. before the start of the school year, by letter dated August 24, 2006, T.R.'s Mother notified the Department of that she was placing T.R. in the Rebecca School, and that she would seek tuition payment at an impartial hearing. (Exhs. "D"; "P").

Apparently in response, and having never offered T.R. a placement, the CSE notified T.R.'s Mother of an educational planning conference scheduled for August 31, 2006. (Exh. "JJ"; Exh. "C", Tr. at 234:3-21).[3] On August 31, T.R.'s Mother arrived at the CSE, but no CSE personnel knew of a meeting, and no meeting was held. (*Id.*, Tr. at 235:23-236:12). Despite this, a school psychologist testified at the Impartial Hearing that he met with T.R.'s Mother that day and called a placement officer, who told him that *no placement* had been offered to T.R. for the 2006-2007 school year. (*Id*, Tr. at 402:18-403:13; Exh. "HH"). The CSE allegedly called T.R.'s representative that day to reschedule a meeting but T.R.'s representative advised the CSE that T.R. needed a school and that T.R. was being enrolled in an appropriate private school.

On September 7, without prior notice, the CSE called T.R.'s Mother and tried to hold a telephonic IEP meeting, which she rescheduled for September 15 so she could attend. (Exh. "C", Tr. at 236:16-237:9). T.R. started the Rebecca School on September 13. (*Id.*, Tr. at 255:1-3). T.R.'s Mother attended the CSE meeting on September 15, at which a new IEP for the 2006-2007 school year was developed, removing T.R.'s paraprofessional over the objection of T.R.'s Mother. (*Id.*, Tr. at 237:25-238:17, Exh. "HH".)[4] On September 19, after the start of the school year, the CSE provided a placement recommendation for T.R., which T.R.'s Mother visited, found inappropriate and rejected. (*Id.*, Tr. at 244:15-245:3; 311:20-314:3; Exh. "H").

## II.    **T.R.'s Mother Is Erroneously Denied Tuition Payment**

At an Impartial Hearing request by T.R.'s Mother, the Impartial Hearing Officer ("IHO") found that although the Department conceded it failed to provide a FAPE, the Rebecca School

---

[3]    At the Impartial Hearing, T.R.'s Mother recalled going to the CSE meeting on August 30, but the CSE's notes reflect she attended on August 31, the date that the CSE conference had been scheduled. (Exh. "HH").

[4]    In the Plaintiff's Motion for Summary Judgment, it misstated that the Department objected to the September 15, 2006 IEP. The representative of T.R.'s Mother objected to its admission and the Department objected to testimony concerning the meeting for that reason and because it had conceded it failed to provide FAPE, thus claimed it was irrelevant. (Exh. "C", Tr. at 300:1-13). Exhibits "H" and "HH" reflect that September IEP.

was not an appropriate placement, thus the IHO did not determine whether equitable considerations favored the Mother. (Exh. "B", pp. 7-11). T.R.'s Mother appealed the decision to the SRO, who held that the Rebecca School was an appropriate placement but that "equitable considerations do not support [the] request for payment of [T.R.'s] tuition costs". (Exh. A. at 15-16). T.R.'s Mother filed the Complaint appealing the SRO's decision on October 30, 2007.

## ARGUMENT

I.    **Because the Department Failed to Provide a FAPE, The Equitable Considerations Favor Granting Tuition Payment to T.R.'s Cooperative Mother**

As Judge John G. Koeltl of the Southern District of New York recognized in March of this year in reversing the SRO and finding that the equitable considerations favored tuition payment, this Court has broad discretion to determine equitable relief. *Jennifer D. v. N.Y.C. Dep't of Educ.*, No. 06 Civ. 15489 (JGK), 2008 WL 857554, *5 (S.D.N.Y. March 31, 2008). Thus, contrary to the Department's claim, the Court is not required to defer to the SRO's determination on whether equitable considerations warrant tuition payment. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ("the [IDEA] authorizes... reimbursement [and] directs the court to 'grant such relief as [it] determines is appropriate.' ... [This] confers broad discretion on the court.") (citations omitted); *see* 20 U.S.C. § 1415(i)(2)(C)(iii)(2006); *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006).[5]

The Department has conceded both that it failed to provide T.R. a FAPE and that the private school chosen by the Mother was an appropriate placement. (Department's Motion at 6).

---

[5] Courts *only* defer to agency determinations concerning educational policy, such as the appropriateness of the IEP or the private school chosen by a parent. *See Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1314 n. 5 (11th Cir. 2003) (reversing summary judgment in favor of the school district, and stating that although deference is given to agency determinations on education policy, "[r]eimbursement... is 'a matter of *equitable* relief, committed to the sound discretion of the district court...'") (quotation omitted) (emphasis in original).

In such cases, federal courts in New York have found that "the District's utter abdication of its responsibility to provide… FAPE… [and] the law's imposition of this duty on the District is so well-settled--that… the equities favor the parents." *Gabel v. Bd. of Educ.*, 368 F. Supp. 2d 313, 329 (S.D.N.Y. 2005). *See M.V. v. Shenendehowa Cent. Sch. Dist.*, No. 1:06-CV-0571 (LEK/RFT), 2008 WL 53181, *5 (N.D.N.Y. Jan. 2, 2008) ("it would be inequitable to reward the [Department] for its admitted failure to comply with IDEA" by denying the parent payment of tuition.) Based upon this case law alone--and especially here where the denial of FAPE involved the Department's egregious failure to offer T.R.'s Mother any school for the 2006-2007 school year--the Court should deny the Department's Motion because the equitable considerations inherently favor tuition payment for T.R's Mother.

This is especially true in cases, such as this one, where "there was cooperation and communication on the parents' part, and the hearing request was timely." *A.C. v. Bd. of Educ.*, No. 06 Civ. 4238 (CLB), 2007 WL 1259145, at *6 (S.D.N.Y. April 27, 2007) (quotation omitted). *See also M.V.*, 2008 WL 53181 at *5; *Gabel*, 368 F.Supp.2d at 329 (finding tuition payment proper where District failed to provide FAPE and parent cooperated and communicated with District and reviewed placement offered by the District). The Department does not contest the following facts, which are also set forth in T.R's Mother's Motion for Summary Judgment, that show that T.R.'s Mother cooperated with the Department: T.R.'s Mother timely requested that T.R.'s case be re-opened; she timely requested a recommendation for an appropriate educational program for the 2006-2007 school year; she attended every meeting scheduled by the CSE in 2006; she provided the CSE with every document it requested; she requested an appropriate public school placement in the July CSE meeting; she attended the belated September 2006 IEP meeting; she visited the public school placement the Department ultimately

7

offered well after the start of the 2006-2007 school year on September 19, 2006; and she timely filed a notice of hearing. (Exhs. "D", "CC", "HH", "Y,", "Z"; Exh. "C" Tr. at 234:3-238:4, 244:15-245:3, 286:14-288:23, 396:21-297:24, 311:20-314:3, 451:8-453). These uncontested facts prove parental cooperation a matter of law and defeat the Department's Motion for Summary Judgment. *See A.C.*, 2007 WL 1259145, at *6; *M.V.*, 2008 WL 53181 at *5; *Gabel*, 368 F. Supp. 2d at 329.

The Department cannot cite one case in support of the Motion where a Court found that equitable considerations favored the school district that so egregiously failed to comply with the IDEA by failing to offer a disabled child a school placement ***prior to the commencement of the school year***. This certainly was not the situation in *Bettinger v. N.Y.C. Bd. of Educ.*, No. 06 CV 6889, 2007 WL 4208560, *9 (S.D.N.Y. Nov. 20, 2007), a case cited by the Department, and about which it omits critical facts that distinguish it from T.R.'s case. In *Bettinger*, the child was accepted to the summer and school year programs at a private school in early 2005, and the parents placed substantial deposits for the summer and school year programs totaling one-tenth and one-third of the tuitions respectively. *Bettinger*, 2007 WL 4208560 at *1-*2. Months later, the parents requested the CSE convene and develop and IEP for the child, which IEP was designed in June of 2005. *Id.* During the summer, after the child had begun the private school program, the parents were contacted by the district with two non-public school referrals. *Id.* The parents refused to bring their child for an interview at one school, or otherwise visit and consider the schools, and stopped meeting with the CSE. *Id.* Because the parents failed to visit or express dissatisfaction with the offered schools and failed to meet with the CSE, the Court denied tuition payment. *Id.*, 2007 WL 4208560 at * 7-*8.

Here, unlike *Bettinger*, the Department failed to offer T.R.'s Mother **any** placement prior to September of the 2006-2007 school year, despite the fact that she cooperated with the Department's CSE throughout the summer of 2006 to develop an IEP for T.R. and requested a placement. (*Id.*, Tr. at 235:23-236:12, 244:15-245:3). Unlike *Bettinger*, the reduced deposit placed by T.R.'s Mother was minimal (1/36 of the tuition) and placed solely secure an appropriate school in the event that the Department failed to offer one. (Exh. "C", Tr. at 152:10-153:20). Unlike *Bettinger*, T.R.'s Mother visited the school belatedly offered by the Department (an inappropriate public school, unlike the two approved private schools offered in *Bettinger*) after T.R. had started the school year at the Rebecca School. (*Id.*, Tr. at 311:20-314:3, 402:18-403:13; Exhs. "H", "HH"). The Mother's cooperation in this case is undeniable.

As the Department's Motion fails under the case law, its only recourse is to erroneously shift the blame to T.R's Mother. The Department alleges, without substantiation, that T.R.'s Mother never intended to accept any proposed placement by the Department. The irony of this speculation is that T.R.'s Mother *never had the opportunity* to accept any proposed placement by the Department because it failed in its federally mandated duty to offer a school for T.R. for the 2006-2007 school year. Further, the evidence is that T.R.'s Mother applied to the Rebecca School and testified that she placed a small deposit only to secure a spot for T.R. in an appropriate school for the 2006-2007 school year in case the Department failed to provide an appropriate placement. (Exh. "C", Tr. at 250:5-13). T.R.'s Mother advised the Department of T.R.'s enrollment in the Rebecca School as early as August 24, 2006 (thus the Department could have formulated an appropriate IEP in September based upon the Rebecca School's program if, as the SRO asserted, knowledge about the program would helped the Department "model a

program"). The Mother's cooperation with the Department and willingness to visit a school offered well after the start of the school year contradicts the Department's unfounded allegations.

## II.  T.R.'s Mother Provided 10 Day Written Notice to the Department

The Department erroneously alleges that T.R.'s mother failed to provide the proper notice that she was dissatisfied with the July 6, 2006 IEP (the "July IEP"). The evidence is that T.R.'s Mother provided the Department with written notice in a letter dated August 24, 2006, received by the Department on August 25, that she was dissatisfied with the July IEP and that she was placing T.R. in the Rebecca School (the "Notice Letter"). (Exhs. "D"; "P"). The Notice Letter was provided more than ten (10) business days prior to the day that T.R. started the Rebecca School on September 13, 2006. (Exh. "J"). N.R.'s Mother complied with the IDEA's requirement that she *either* inform the IEP team that she was "rejecting the placement proposed... including stating [her] concerns and... intent to enroll [T.R.] in a private school at public expense" *or* provide written notice to the public agency "*10 business days... prior to the removal of the [T.R.] from the public school*" of the aforementioned information. 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa)-(bb) (emphasis added); *see Petway v. D.C.*, No. Civ. A. 03-1673, 2005 WL 3276349, * 11 (D.D.C. Aug. 10, 2005) (finding that parents who approved IEPs and subsequently provided with 10 day written of their removal to private school were entitled to tuition reimbursement); *cf Frank G.*, 459 F.3d at 372.[6]

The Department's assertion that the Notice Letter somehow failed to comply with the

---

[6] The Court in *Frank G.*, affirmed tuition payment where parents *did not* object to an IEP, but only made a written request for a hearing asking for services at the child's current private school, and then enrolled the child in a *different* private school. 459 F.3d at 361-62. Addressing a different interpretation of the IDEA by the district of education, the Second Circuit found that under the IDEA, "[a]ll that is required of parents who have received an IEP for their child is that they provide the appropriate public agency with reasonable notice that they plan to 'reject [ ] the placement proposed....' *[S]uch notice was provided here.*" 459 F.3d at 372 (quotation omitted).

IDEA because T.R.'s Mother did not reschedule an August 31, 2006 meeting, *a meeting for T.R. that the Department failed to conduct because its staff had no knowledge of the meeting* (Exh. "JJ"; Exh. "C", Tr. at 235:23-236:12), places requirements on the parent that are not in the IDEA. *Frank G.*, 459 F.3d at 372.[7] The Department omits that T.R.'s Mother cooperated with its CSE by scheduling an IEP meeting the following week and attending that meeting. (Exh. "C", Tr. at 237:25-238:17).

### III. **The Department Did Not Require T.R.'s Mother to Attend a Department Evaluation**

The Department relies upon the SRO's strained reasoning that faults T.R.'s Mother for not attending the evaluation appointment in May of 2006 as a justification for denying tuition payment. Under the facts and the law, this argument is unavailing. The record reflects that T.R.'s Mother did not attend the Department evaluation because she did not receive the notice, not that she *refused* to make T.R. available. (Exh. "C", Tr. at 282:11-21, 338:16-340:7). T.R.'s Mother understood the Department did not pursue its evaluation as it had Dr. Skurka's evaluation. (*Id*). The Department never objected to the fact that it did not conduct a Department evaluation, did not try to schedule another evaluation, and accepted Dr. Skurka's evaluation to prepare the July IEP. (*Id*.; Exh. "AA").[8] Here, T.R.'s Mother did not refuse to allow the Department to evaluate T.R. and the Department created an IEP with Dr. Skurka's evaluation.

---

[7] *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 524 (6th Cir. 2003), is distinguishable as the parents failed to give proper written notice where their letter failed to advise of their objections to the IEP and intent to remove their child from school. 348 F.3d at 524-525  Here, the Notice Letter complied with these requirements.

[8] The cases cited by the Department are distinguishable. *See Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1314 n. 5 (11th Cir. 2003) (vacating the District Court's grant of summary judgment for the district because, *inter alia*, a bench trial was necessary to determine, among other issues, whether the parents *refusal* to bring their child to scheduled district evaluations contributed to the failure of the development of a FAPE); *P.S. v. Brookfield Bd. of Educ.*, 353 F. Supp. 2d 306 (D.Conn. 2005) (denying tuition reimbursement where parents "revoked consent for [child] to be evaluated by [District psychologist]…"); *Schoenfield v. Parkway Sch. Dist.*, 138 F.3d 379 (8th Cir. 1998) (where parent failed "to seek an IEP before placing [child] in private school", thus it was not even determined that child was handicapped).

**CONCLUSION**

The Department failed to provide T.R., a disabled child, a placement for the 2006-2007 school year. T.R.'s Mother provided the Department all the information it requested, attended every meeting, requested placements, and worked with the Department to obtain a placement. Her unilateral placement of T.R. in the Rebecca School, an appropriate placement, was justified under the circumstances and T.R.'s Mother is entitled to tuition payment. For all of the foregoing reasons, the Court should deny the Department's Motion to Summary Judgment.

Dated: April 11, 2008
    New York, New York

                Respectfully submitted,


                Caroline J. Heller (CH-8814)
                *Greenberg Traurig, LLP*
                The MetLife Building
                200 Park Ave.
                New York, New York
                (212) 801-9200

                      -and-

                Matthew Lenaghan (ML-8603)
                Kim Madden (KM-3570)
                *Advocates for Children*
                151 W. 30th Street, 5th Floor
                New York, NY 10001
                (212) 947-9779