07-CV-9648
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

N.R., N.R. ON BEHALF OF T.R.,

Plaintiff,

-against-

THE DEPARTMENT OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, a/k/a THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK and JOEL KLEIN, in his official capacity as Chancellor of the New York City School District,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street, Room 2-173*
*New York, N.Y. 10007*

Of Counsel: Michael A. Suarez
Tel: (212) 788-8710
Law Department No. 2007-036538

## TABLE OF CONTENTS

|   | Page |
|---|---|
| **PRELIMINARY STATEMENT** | 1 |
| **STATEMENT OF FACTS** | 3 |
| **ARGUMENT** | 3 |
|     THE SRO DECISION THAT THE EQUITIES DO NOT SUPPORT PLAINTIFF'S CLAIM FOR TUITION REIMBURSEMENT BECAUSE SHE FAILED TO COOPERATE WITH THE DOE WAS CORECTLY DECIDED AND SHOULD BE UPHELD.. | 3 |
| **CONCLUSION** | 10 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

N.R., N.R. ON BEHALF OF T.R.,

                                         Plaintiffs,

          -against-

THE DEPARTMENT OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW YORK,
a/k/a THE BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW YORK
and JOEL KLEIN, in his official capacity as Chancellor
of the New York City School District,

                                         Defendants.

------------------------------------------------------------------------ x

07-CV-9648
(BSJ) (DCF)

**DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

### PRELIMINARY STATEMENT

Defendants New York City Department of Education ("DOE") and Joel Klein, in his official capacity as Chancellor of the New York City Department of Education, respectfully submit this memorandum of law in further support of their motion to for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and in opposition to plaintiff's motion for summary judgment.

As fully set forth in defendants' Memorandum of Law is Support of its Motion for Summary Judgment dated March 17, 2008 ("defendants' moving papers"), it is well-settled that, in order to be entitled to tuition reimbursement for the unilateral placement of a student in private school, a parent bears the burden of demonstrating three distinct "prongs" established by the

Supreme Court of the United States in <u>Burlington Sch. Comm. v. Dep't of Educ.</u>, 471 U.S. 359, 373-347 (1985) and <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 12 (1993): (1) the educational program recommended by the board of education was inadequate or inappropriate; (2) the program selected by the parent was appropriate; and (3) equitable considerations support the parent's claim. Now, in an attempt to defeat dismissal, plaintiff attempts to conflate prongs 1 and 3 by arguing that the equities "inherently" support reimbursement, simply because she prevailed on prong 1. As set forth more fully below, this argument is not only circular, but is an incorrect statement of the law, as it ignores the Supreme Court's holdings that clearly establish three distinct factors which must be demonstrated in order to prevail.

Not only does plaintiff's legal argument fail, but her factual one does as well. Plaintiff argues that she is entitled to tuition reimbursement because she "cooperated with the department" during the IEP process. Plaintiff's contention is not supported by the record. As the SRO found, plaintiff failed to inform the DOE that she was dissatisfied with the Student's IEP, failed to timely notify the DOE that she had secured a unilateral placement for the Student at the Rebecca School, failed to make the Student available for a timely-noticed CSE evaluation, refused the DOE's efforts to schedule a meeting to address the Student's needs before the new school year began, and overall refused to cooperate with the DOE in securing a proper placement for the Student. The SRO's decision to deny plaintiff's demand for tuition reimbursement was correct as plaintiff's failure to cooperate with the DOE violated the IDEA's mandate of parental cooperation. Given this failure to cooperate, equitable considerations do not support the plaintiff's claim for tuition reimbursement.

Accordingly, this Court should sustain the underlying administrative decisions, and deny tuition reimbursement to plaintiffs for the 2006-2007 school year at the Rebecca School.

## STATEMENT OF FACTS

Defendants respectfully refer the Court to Defendants Local Civil Rule 56.1 Statement of Material Facts Not In Dispute, dated March 17, 2008, for a statement of the relevant undisputed material facts upon which this memorandum of law is based.

## ARGUMENT

### THE SRO DECISION THAT THE EQUITIES DO NOT SUPPORT PLAINTIFF'S CLAIM FOR TUITION REIMBURSEMENT BECAUSE SHE FAILED TO COOPERATE WITH THE DOE WAS CORRECTLY DECIDED AND SHOULD BE UPHELD.

The SRO thoroughly reviewed the administrative record, including testimony from the parent and the Student's teachers, and correctly determined that the equities do not support plaintiff's claim for tuition reimbursement. In her Memorandum of Law in Support of her Motion for Summary Judgment, ("Plaintiff's Memo"), plaintiff essentially makes two arguments. First, she argues that the fact that she prevailed on prong 1 of the Burlington-Carter test means that she must also prevail on prong 3 (the only prong at issue in this action), unless her lack of cooperation "frustrated the Department's placement system." Second, she argues that the SRO was incorrect in finding that she failed to cooperate in the IEP process. As discussed below, both arguments are incorrect.

First, plaintiff appears to argue that because the DOE failed to provide the Student with a Free Appropriate Public Education ("FAPE"), equitable considerations automatically favor her claim for tuition reimbursement. However, plaintiff's tautological argument is flawed and incorrectly states the law. Plaintiff essentially attempts to create an end run-around the Burlington-Carter test by collapsing the first and third prongs into one, thereby completely eliminating from consideration any of the parent's actions in dealing with the DOE, or at least creates a presumption

3

that the equities can only favor the district when the parent's lack of cooperation completely frustrates the process.

In Burlington and Carter, the Supreme Court established a three-prong test for determining when a parent who has unilaterally placed their child in a private school may be entitled to tuition reimbursement. Under this "Burlington-Carter" test, parents who unilaterally place their child in a private school however may be entitled to tuition reimbursement only if all three prongs of the test are met: (1) the services offered by the DOE were inadequate or inappropriate; (2) the placement selected by the parent is appropriate; and (3) equitable considerations favor an award of tuition reimbursement. Burlington 471 U.S. 359, 373-74; Carter, 510 U.S. 7, 12.

Plaintiff's interpretation of the law would essentially require a Burlington-Carter analysis to end after a prong 1 finding, requiring the Court to render a decision in plaintiff's favor based solely upon the determination that the DOE did not provide the Student with a FAPE. According to plaintiff's construction of the Burlington-Carter test, the parent's actions would be irrelevant in weighing equitable considerations in this case. Such an interpretation of the Burlington-Carter analysis is not supported by Burlington, Carter, or their progeny, and would only serve to eviscerate the 3-prong test expressly established by the Supreme Court. Indeed, whether a parent cooperated with the DOE is the foremost consideration in determining whether the equities support their claim for tuition reimbursement. See Bettinger v. N.Y. City Bd. of Educ., 2007 U.S. Dist. LEXIS 86116. ("Certainly a major consideration in deciding whether the third factor is satisfied is whether the parents have cooperated with the City throughout the process to ensure their child receive a FAPE.") See also Carmel Cent. Sch. Dist. v. V.P., 373 F. Supp. 2d 402, 418 (S.D.N.Y. 2005). ("If courts cannot read a parent's failure to cooperate with the City's

4

efforts to place a child as "equitably disentitl[ing] them to tuition reimbursement, then the third prong of the Burlington test is essentially meaningless.")

Here, with respect to prong 1 of the Burlington-Carter analysis, the DOE conceded that it did not provide the Student with a FAPE. This prong 1 finding in favor of plaintiffs did not, however, warrant automatic tuition reimbursement. In accordance with the Burlington-Carter test, the SRO moved on to the second and third prongs of the test, and concluded that although the plaintiff satisfied her burden with respect to prong 2, equitable considerations did not support her claim for tuition reimbursement because plaintiff failed to cooperate with the DOE. See Exhibit A SRO Decision annexed to defendants' moving papers ("SRO Dec.") at 15. To adopt plaintiff's construction of the Burlington-Carter test, with its complete disregard of any consideration of whether the parent cooperated with the DOE, would be to render the third prong, and in fact, the entire test, meaningless.

Plaintiff cites Gabel v. Bd of Educ of the Hyde Park Cent. Sch. Dist., 368 F.Supp. 2d 313, 329 (S.D.N.Y. 2005) in support of her argument that "where the Department fails to provide a FAPE...the equities inherently favor the parent that attempts to provide an appropriate education elsewhere." See Plaintiff's Memo, p. 9. Plaintiff's characterization of the holding of Gabel is incorrect. In Gabel, the court did not, as plaintiff suggests, determine that the equities weighed in favor of the parents simply because the school district failed to provide a FAPE. Rather, the Court granted tuition reimbursement only after carefully weighing the conduct of the school district against the parent's failure to cooperate with the district. This analysis is consonant with the analysis established by the Supreme Court in Burlington and Carter, because it considered all of the factors in the case, including the level of the parent's cooperation, and determined that the equities weighed in the parent's favor. Moreover, the facts of that case are entirely distinguishable from the instant case. In Gabel, the record indicated that the parents were

5

attempting to cooperate with the district to place their child in public school, but that the district's actions thwarted that process. Here, the parents never even intended to have the student attend public school, and that they failed to cooperate with the DOE.

Plaintiff cites M.V. v. Shenendehowa Cent. Sch. Dist., 2008 WL 53181 (N.D.N.Y. Jan. 2, 2008) as factually similar to this case. However, plaintiff's reliance on this case is inapposite. In M.V., the Court based its determination that the equities favored the parents in part on the fact that the parents had "communicated concerns, both at meetings and thereafter, to the District in writing. . . . " Id. at *13. Plaintiff in this case did not do so. Unlike the parents in M.V., the SRO found that at no time did the parent in this case communicate her concerns to the DOE, either at meetings, or thereafter. See SRO Dec. at 15. In fact, there is no dispute that plaintiff failed to cooperate with the DOE in that she failed to notify the CSE of her dissatisfaction with the proposed IEP in violation of § 1412(a)(10)(C)(iii)(I)(aa) of the IDEA. In her testimony before the IHO, plaintiff conceded that the DOE had no reason to that she was dissatisfied with the recommended school program. See SRO Dec. at 15.

Plaintiff argues that because she did not purposefully frustrate the placement process, equitable considerations support the parent's claim for tuition reimbursement. However, the overwhelming weight of the case law, as well as the IDEA itself, provides for denial of tuition reimbursement merely upon a finding that the parents failed to cooperate with the school district in securing a placement for a child, and do not require a finding that they actively frustrated the school district's efforts as a prerequisite to denying tuition reimbursement. See e.g., Burlington, 471 U.S. 359, 373-74; M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 68 (2d Cir. 2000) (holding that equitable considerations did not support the parent's claim for tuition reimbursement because "[the child's] parents failed to place in issue the appropriateness of [the child's] IEPs."); Carmel, 373 F. Supp. 2d 402, 418; U.S.C. §1412(a)(10(C)(iii)(I)—(III).

6

In any event, the record is clear that the plaintiff's failure to cooperate did frustrate the IEP process, and should preclude an award of tuition reimbursement. The SRO found that plaintiff violated section 1412 of the IDEA by failing to raise the appropriateness of the Student's IEP at the most recent IEP meeting prior to the Student's placement in private school as required by § 1412(a)(10)(C)(iii)(I)(aa), failing to timely notify the DOE before unilaterally placing the Student at the Rebecca School and then seeking tuition payment from the DOE as mandated by § 1412(a)(10)(C)(iii)(I)(bb), and failing to make the Student available for a district evaluation in violation of § 1412(a)(10)(C)(iii)(II). Moreover, plaintiff failed to communicate to the DOE that she had applied to the Rebecca School, executed an enrollment agreement with that school, or placed a deposit to secure the Student's placement at that school. See Ex. A SRO Dec. at 15.

In an effort to distract this Court from her failure to cooperate, plaintiff argues that she cooperated with the DOE by requesting that the Student's case be re-opened, attending CSE meetings, requesting a public school placement, providing the CSE with documents it requested, and timely filing a notice of hearing. See Plaintiff's Memo, p. 11. However, these actions do not demonstrate that plaintiff adequately cooperated with the DOE.

First, merely being present at CSE meetings is not evidence of cooperation. Plaintiff failed to participate in the July 6, 2006 CSE meeting by not informing the DOE that she had already enrolled the Student in a private school. Second, with respect to requesting that the Student's case be re-opened and a public school placement, these actions occurred prior to the formulation of the IEP on July 6, 2006. Plaintiff simply obliged the DOE to get an IEP developed for the Student. As fully explained in defendants' moving papers, this Court in Bettinger v. N.Y. City Bd. of Educ., 2007 U.S. Dist. LEXIS 86116, dismissed the parents' claim for tuition reimbursement on facts much like the instant case. In his decision, Judge Crotty found that after the student was admitted to a private school, the parents recognized the need to develop an IEP for

7

the student, and wholly cooperated with the DOE, including contacting the CSE concerning the student's status. Id at *14  However Judge Crotty determined that these actions did not support tuition reimbursement because it was in the parents' interest to cooperate at this stage of the process. Id.  Once the IEP was developed however, the parents no longer cooperated with the DOE because "it was no longer in their interest do so." Id.

Similarly here, in recognition of the need to develop an IEP for the Student, plaintiff requested that the Student's case be re-opened, requested an educational program for the Student, and attended but did not participate in the July CSE meeting because it was in her interest to do so.  However, once the IEP was developed at the July CSE meeting, plaintiff declined the DOE's request to reschedule an August 31, 2006 CSE meeting to address plaintiff's concerns relative to a placement for the student before the new school year began, and only considered the DOE's offered placement after the school year at the Rebecca School commenced.  Plaintiff complacently went along with the placement process to achieve her veiled objective of having the Student placed at the Rebecca School at the DOE's expense.  Once the Student was enrolled in private school, and the IEP was developed, plaintiff filed her due process challenge, and from that point forward, refused to entertain any of the DOE's suggestions, as it was no longer in her interest to do so.

Plaintiff also contends that her August 24, 2006 letter to the DOE advising it of the Student's enrollment at the Rebecca School is evidence of her cooperation with the DOE. However, that letter, informing the DOE for the first time that plaintiff had placed the Student in a private school and was seeking tuition payment and transportation services from the DOE, came nearly 2 months after the July 6, 2006 CSE meeting, which was the most recent IEP meeting prior to the impartial hearing request.  The IDEA specifically allows for denial of tuition reimbursement when "at the most recent IEP meeting that the parents attended prior to removal of the child from

8

the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency, including stating their concerns and their intent to enroll their child in a private school at public expense." § 1412(a)(10)(C)(iii)(I)(bb).

Additionally, plaintiff's argument that she cooperated by providing every document requested by the DOE is disingenuous, as she only provided a private psychological report in lieu of making the Student available for the DOE's scheduled evaluation, and only after the Student had already been offered a placement at the Rebecca School. See Ex. A SRO Dec. at 4. Finally, the argument that filing an impartial hearing request is tantamount to cooperation with the DOE is spurious. Requesting an impartial hearing does not evince an intention to cooperate with the DOE at all. Rather, in this case, it is evidence of an express refusal to cooperate.

Plaintiff's conduct in this case violated the IDEA's mandate for parental cooperation. While plaintiff was certainly within her rights to explore and even apply to various private schools for the Student without informing the DOE, she was not within her rights to enroll the Student in a private school, then sit idly by during IEP meetings, allowing the DOE to proceed with developing a program for the Student without any idea that the parent took issue with the program, and then demand tuition payment from the DOE at the eleventh hour. The SRO correctly found that in light of these actions, equitable considerations did not support plaintiffs' claim for tuition reimbursement.

Accordingly, this Court should uphold the administrative determination that found that the equities did not support tuition reimbursement to plaintiff for her unilateral placement of the Student at the Rebecca School for the 2006-2007 school year.

## **CONCLUSION**

For the reasons set forth in this memorandum of law in further support of defendants' motion for summary judgment and in opposition to plaintiffs' motion for summary judgment, defendants respectfully request that the Complaint be dismissed in its entirety as the preponderance of the evidence demonstrates that the SRO decision holding that plaintiff is not entitled to tuition reimbursement for her unilateral placement of the Student at the Rebecca School for the 2006-2007 school year was correctly decided.

Dated:   New York, New York
         April 11, 2008

                MICHAEL A. CARDOZO
                Corporation Counsel of the
                  City of New York
                Attorney for Defendants
                100 Church Street, Room 2-173
                New York, New York 10007
                (212) 788-8710

By: _____
                Michael Suarez (MS 5038)
                Assistant Corporation Counsel