UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| N.R., N.R. on behalf of T. R.,<br><br>Plaintiff,<br><br>v.<br><br>THE DEPARTMENT OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, a/k/a, THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, and JOEL KLEIN, in his official capacity as Chancellor of the New York City School District,<br><br>Defendants. | No. 1:07 Civ. 9648<br><br>(BSJ/DCF) |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

GREENBERG TRAURIG, LLP
*Attorneys for Plaintiff N.R., N.R. on behalf of T.R.*
THE METLIFE BUILDING
200 PARK AVE. - 15TH FLOOR
NEW YORK, NEW YORK 10166

———

MAIN NO.: (212) 801-9200
FACSIMILE NO.: (212) 801-6400
www.gtlaw.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION .................................................................................................................1

ARGUMENT..........................................................................................................................1

I.     After the Department Failed to Offer Any School to T.R.'s Mother, Her Only Option To Appropriately Educate Her Autistic Child Was To Place T.R. in the Rebecca School, Thus Equitable Considerations Must Favor Tuition Payment ...................................................................................................................2

II.    The Department's Allegations of "Non-Cooperation" are Not Supported by The Record, Thus the Equities Favor Tuition Payment .......................................4

CONCLUSION .....................................................................................................................6

# TABLE OF AUTHORITIES

## Cases

*Bettinger v. N.Y.C. Bd. of Educ.*, No. 06 CV 6889, 2007 WL 4208560
(S.D.N.Y. Nov. 20, 2007)..................................................................................................4

*Gabel v. Bd. of Education of the Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313
(S.D.N.Y. 2005)..........................................................................................................passim

*M.C. ex. Rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60
(2d Cir. 2000)...................................................................................................................4

*M.V. v. Shenendehowa Cent. Sch. Dist.*, No. 1:06-CV-0571, 2008 WL 53181
(N.D.N.Y. Jan. 2, 2008)..................................................................................................2, 3

*Parents of Student of W. v. Puyallup Sch. Dist.*, No. 3, 31 F.2d 1489
(9th Cir. 1994) ..................................................................................................................3

*Sch. Comm. of Burlington v. Dep't of Educ.*,
471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ...................................................1

*Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 801-02 (1st Cir.),
aff'd, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ..........................................3

## Statutes

1412(a)(1)(C)(iii)...................................................................................................................1

1412(a)(1)(C)(iii)(I)(aa)-(bb)..................................................................................................5

## INTRODUCTION

This Court has the discretion to determine the sole issue in this case: when Defendants, the Department of Education, *et al.* (the "Department"), concede they have failed to fulfill their duty under the Individuals with Disabilities Education Act ("IDEA") to provide an autistic child a free and appropriate public education ("FAPE"), *never deny that they* failed to offer that child *any* school placement for the school year, and also concede that the private school in which the parent placed the child suits that child's special needs, does the law sanction payment of the private school by the Department. The answer is an unequivocal, *yes*.

## ARGUMENT

The Department conceded in their Memorandum in Support of Motion for Summary Judgment both that they failed to provide Plaintiff N.R.'s (the "Mother") autistic child, T.R., with a FAPE as required by the IDEA, and that the private school in which T.R.'s Mother placed T.R., after the Department failed to offer any school for T.R., was appropriate. Accordingly, it is undisputed that T.R.'s Mother has satisfied the first two prongs of the three prong test established by the Supreme Court to determine whether the Department should pay tuition for the private school chosen by T.R.'s Mother. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 367, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).[1] Thus, the sole issue for this Court to determine is prong three; whether equitable considerations favor granting tuition payment.

---

[1] Contrary to the Department's claim, this Court has absolute discretion in making this determination and need not defer to the decision of the SRO. *Burlington*, 471 U.S. at 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 ("the [IDEA] authorizes… reimbursement [and] directs the court to 'grant such relief as [it] determines is appropriate.' … [This] confers broad discretion on the court.") (citations omitted); *e.g.* 20 U.S.C. § 1415(i)(2)(C)(iii). As a practical matter, the SRO's decision does not provide guidance because the SRO did not hear the live witnesses and made his erroneous decision, ignoring and misconstruing facts and misapplying law, based upon the transcript and evidence admitted at the hearing. (*See* Heller Declaration dated March 17, 2008, Exhs A-KK; Exh. A, n.1). T.R.'s Mother submitted the same transcript and evidence to the Court that was available to the SRO, thus the Court is in the same position to evaluate, based upon the law and the record, whether the facts in the record reflect that equitable considerations favor tuition payment.

I.  **After the Department Failed to Offer Any School to T.R.'s Mother, Her Only Option To Appropriately Educate Her Autistic Child Was To Place T.R. in the Rebecca School, Thus Equitable Considerations Must Favor Tuition Payment**

The Department conceded it failed to provide T.R.'s Mother a FAPE, and failed to offer T.R.'s Mother *any* school in which to place T.R. In cases such as this, the equities inherently favor the parent that attempts to provide an appropriate education elsewhere. *Gabel v. Bd. of Education of the Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 329 (S.D.N.Y. 2005); *M.V. v. Shenendehowa Cent. Sch. Dist.*, No. 1:06-CV-0571, 2008 WL 53181, *3 (N.D.N.Y. Jan. 2, 2008).[2] The Department's attempt to distinguish *Gabel* is erroneous. In *Gabel* the district informed the parents, two weeks prior the start of the school year, that the program it had offered was inappropriate and did nothing to assist the parents find an alternative placement. 368 F. Supp. 2d at 328. The Court concluded that "the District's *utter abdication* of its responsibility to provide... FAPE is so clear from the record-and the *law's imposition of this duty* on the District is so well-settled-that I must conclude that the equities favor the parents." *Id.*, 368 F. Supp. 2d at 329 (emphasis added). The Department's abdication of its responsibilities here are worse than in *Gabel* because the Department *did not offer any school* to T.R.'s Mother prior to the beginning to the school year, thus she had no option other than to place T.R. in the Rebecca School. The Department has failed to address this fact.

Certainly, parental cooperation is important, as the Department may be hindered in complying with its legal duty to provide a FAPE if parents do not participate at meetings or review offered public schools. The difference here is that there is no evidence that T.R.'s

---

[2] In *M.V.*, the Court recognized that a parent need not comply with all of the district's requests to be entitled to tuition payment when the parent's failure to comply is not unreasonable taking into account all of the facts. The Court granted tuition payment where the district admitted it failed to provide a FAPE, though the parent failed to visit offered schools or attend an intake interview after she determined through other means that the schools were not appropriate. *Id.*, 2008 WL 53181, *3. The Court found this failure "was not unreasonable, given her legitimate concerns about the District's ability to make an appropriate placement for [the child]." *Id.* at *5.

Mother acted in any way that impeded the Department from offering a school for T.R. prior to the school year or from otherwise providing a FAPE, even if the Department's allegations regarding the Mother's actions are accurate, which they are not. *See infra* section II. Thus, the Department's utter abdication of its responsibility to provide a FAPE, and the law's imposition of this duty, is reason alone to grant T.R.'s Mother's Motion for Summary Judgment. *Gabel*, 368 F. Supp. 2d at 329; *M.V.*, 2008 WL 53181, *3.

Furthermore, the Department misconstrues the law in asserting that parental cooperation is of "foremost consideration" in determining the equities. The Court is to weigh the conduct of **both** the Department and the parent. *Id.*; *see Parents of Student of W. v. Puyallup Sch. Dist., No. 3*, 31 F.2d 1489, 1496 (9th Cir. 1994) ("'The conduct of both parties must be reviewed to determine whether relief is appropriate.'") (citation omitted); *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 801-02 (1st Cir.), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). Here, it is uncontested that T.R.'s Mother cooperated by timely requesting that T.R.'s case be re-opened, attending every scheduled meeting, requesting an appropriate public school at the July meeting, attending the belated September IEP meeting, visiting the school placement belatedly offered by the Department well after the start of the school year, and timely filing a notice of hearing.[3] (Exhs. "D", "Y,", "Z", "CC", "HH"; Exh. "C" Tr. at 234:3-238:4, 244:15-245:3, 286:14-288:23, 311:20-314:3, 396:21-297:24, , 451:8-453).[4] Given the Department's failure to provide a FAPE and T.R.'s Mother's cooperation, it is clear the equities favor tuition payment. *See M.V.*, 2008 WL 53181 at *5; *Gabel*, 368 F.Supp.2d at 329.

---

[3] Astonishingly, the Department alleges that filing for an Impartial Hearing is evidence of non-cooperation. The right to an Impartial Hearing is a due process right under the IDEA when, as here, the Department fails to provide a FAPE. Thus, filing for an Impartial Hearing is evidence of compliance with the IDEA by the parent.

[4] Contrary to the Department's claim, unsupported by evidence, T.R.'s mother did not refuse to make T.R. available for a Department evaluation. The uncontested evidence is that T.R.'s Mother did not receive the CSE's notice for an evaluation, the CSE relied on the private evaluation provided, and the CSE never attempted to schedule another evaluation or objected to the fact that it did not evaluate T.R. (Exh. "C", Tr. at 282:11-21, 338:16-340:7).

II.  **The Department's Allegations of "Non-Cooperation" are Not Supported by The Record, Thus the Equities Favor Tuition Payment**

The Department's assertions of non-cooperation are inaccurate, omit facts, and do not justify denying summary judgment because the Department has failed to show that any of its assertions, even if taken as true, impeded the Department from providing a FAPE.[5] The Department's main argument is that T.R.'s mother should be denied tuition payment because she did not inform the Department when she enrolled T.R in the Rebecca School, although she had the right not to inform the Department she had applied. (Opp. at 9). The Department cites no law supporting this argument, but the evidence, in fact, is that T.R.'s Mother informed the Department when she enrolled T.R. in the Rebecca School:[6]

- After the Rebecca School offered T.R. a spot, in May T.R.'s Mother executed a contract[7] and in June placed a $2,000 reduced deposit solely to secure a spot for T.R. (Exh. "C", Tr. at 152:10-153:20, 249:16-12, 330:22-331:21).

- As explained by the program director of the Rebecca School, T.R. *was not enrolled* at the school in June as the deposit "was to hold the spot for [T.R.] *to be enrolled* in the program" if T.R.'s Mother made that choice. (*Id.* Tr. at 133:15-23) (emphasis added).

- On August 11, 2006, with no placement offered for the school year, T.R.'s Mother executed an enrollment contract with the Rebecca School, which could have been cancelled on or before August 30 if the Department offered an appropriate placement, *and informed the Department by letter dated August 24, 2006.* (Exhs. "D"; "J").

The Department then erroneously suggests that T.R.'s Mother did not "participate" at the July IEP meeting because she did not inform the CSE that she had enrolled T.R. in the Rebecca

---

[5] In arguing parents must act perfectly, the Department grossly miscites *M.C. ex. Rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000), where the Court *did not* hold that equitable considerations did not support tuition payment, but was addressing payment for counseling, and did not apply U.S.C. § 1412(a)(10)(C)(iii) because the case arose prior to the adoption of that section of the IDEA.

[6] T.R.'s Mother does not concede that the law required her to inform the Department when she enrolled T.R. at the Rebecca School. The case *Bettinger v. N.Y.C. Bd. of Educ.*, No. 06 CV 6889, 2007 WL 4208560, *9 (S.D.N.Y. Nov. 20, 2007) is distinguishable as the Court denied tuition payment because the parents failed to visit or express dissatisfaction with schools the district offered and failed to meet with the CSE after their child began attending the private school. 2007 WL 4208560 at * 7-*8. Here, the Department never offered T.R.'s Mother a school prior the beginning of the school year for her to review, and she continually met with the Department's CSE.

[7] The Department did not offer this contract as an exhibit at the Impartial Hearing.

4

School. As set forth above, T.R was not enrolled in the Rebecca School in July. Further, the undisputed evidence is that T.R.'s Mother fully participated in the July IEP Meeting:

- At the meeting, the Department's CSE changed T.R.'s classification to autism based upon a Doctor's evaluation provided by T.R.'s Mother at its request. (Exh. "C", Tr. at 233:17-25; Exh. "T").

- At the meeting, the Department's CSE developed an IEP, made recommendations for the summer (though T.R. never received those services) and T.R.'s Mother expressed concern about a school placement for T.R. for the school year, which the Department's CSE *failed* to address. (Exh. "C", Tr. at 234:18-235:17; 303:1-304:35; 451:8-453:25).

The Department's next argument against tuition payment is a gross misstatement of a section 1412(a)(1)(C)(iii)(I)(aa)-(bb), claiming T.R.'s Mother was required to comply only with subsection (aa). Under the IDEA, T.R.'s Mother was required to *either* inform the July IEP team that she was "rejecting the placement proposed... including stating [her] concerns and... intent to enroll [T.R.] in a private school at public expense" *or* provide written notice to the public agency "*10 business days... prior to the removal of the [T.R.] from the public school*" of the same. *Id.* (emphasis added). The uncontested evidence is that T.R.'s Mother complied with subsection (bb) by providing the Department a letter dated August 24, 2006, received by them on August 25, that she was dissatisfied with the July IEP and placing T.R. in the Rebecca School more than 10 days before T.R. started school. (Exhs. "D"; "J"; "P").

The Department's last erroneous argument is that T.R.'s Mother allegedly failed to reschedule an August 31, 2006 meeting. The Department omits the fact that the meeting did not occur because the Department's CSE staff forgot about the meeting and sent the parent away when she appeared to participate. (Exh. "C", Tr. at 235:23-236:12, Exh. "JJ"). Though the Mother's representative did not reschedule the meeting that day, the uncontested evidence is that:

- When the Department's CSE, without notice, called T.R's mother on September 7 to hold a telephonic IEP meeting, T.R.'s Mother scheduled that meeting for September 15, when she could attend in person. (Exh, "C", Tr. at 236:16-237:9).

5

- T.R.'s Mother attended the September 15 meeting, at which a new IEP for the 2006-2007 school year was developed, removing T.R.'s paraprofessional over the objection of T.R.'s Mother. (*Id.*, Tr. at 237:25-238:17, Exh. "HH".) On September 19, after the school year had begun, the CSE offered a school for T.R., which T.R.'s Mother visited and found inappropriate. (*Id.*, Tr. at 244:15-245:3; 311:20-314:3; Exh. "H").

Where, as here, the Department failed to offer T.R. a FAPE, failed to offer T.R. *any* education, and does not assert that T.R.'s Mother acted in a way that impeded the Department from providing a FAPE, T.R.'s Mother was entitled to place her autistic child an appropriate private school. Equitable considerations warrant granting T.R.'s Mother tuition payment.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiff's Motion for Summary Judgment finding entitlement to tuition payment totaling $72,500 for the 2006-2007 school year, reversing the decision of the State Review Officer to the extent that it denied tuition payment, and order that T.R.'s Mother is entitled to reasonable attorneys fees and expenses, and any further relief as the Court deems just and proper.

Dated: April 21, 2008
New York, New York

Respectfully submitted,

_____
Caroline J. Heller (CH-8814)
*Greenberg Traurig, LLP*
The MetLife Building
200 Park Ave.
New York, New York
(212) 801-9200

-and-

Matthew Lenaghan (ML-8603)
Kim Madden (KM-3570)
*Advocates for Children*
151 W. 30th Street, 5th Floor
New York, NY 10001
(212) 947-9779

6