```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                     :
N.R., on behalf of T.R.,             :
                                     :
                    Plaintiff,       :
                                     :      07 Cv. 9648 (BSJ)
          v.                         :
                                     :
                                     :      OPINION AND ORDER
THE DEPARTMENT OF EDUCATION OF THE CITY :
SCHOOL DISTRICT OF THE CITY OF NEW YORK,:
a/k/a THE BOARD OF EDUCATION OF THE  :
CITY SCHOOL DISTRICT OF THE CITY OF NEW :
YORK and JOEL KLEIN, in his official :
capacity as Chancellor of the New York :
City School District,                :
                                     :
                    Defendant.       :
------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/09

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 (2006), and on behalf of her son T.R., Plaintiff N.R. brings this action against the Department of Education of the City School District of the City of New York, also known as the Board of Education of the City School District of the City of New York (the "Department"), and Joel Klein, in his official capacity as Chancellor of the New York City School District (collectively, "Defendants"). Plaintiff appeals from an administrative decision of the New York State Department of Education Office of State Review (the "SRO") that declined to reimburse her tuition payment for T.R.'s 2006-2007 placement at the Rebecca School.

1

Both parties have moved for summary judgment. For the reasons that follow, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendants' motion.

## BACKGROUND

### I. The IDEA

Under the IDEA, "states receiving federal funds are required to provide 'all children with disabilities' a 'free appropriate public education.'" Gagliardo v. Arlington Centr. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting IDEA). The New York City Department of Education is required to provide a free appropriate public education ("FAPE") to New York City resident students with disabilities who are in need of special education programs. 20 U.S.C. §§ 1400-1487; N.Y. Educ. Law §§ 4401-4410-a (McKinney's 2005.)

A FAPE must provide "special education and related services tailored to meet the unique needs of a particular child, and be 'reasonably calculated to enable the child to receive educational benefits.'" Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir.1998) (internal quotations and citation omitted)). These services are administered through a written individualized education program ("IEP"), which must be updated at least annually. Walczak, 142 F.3d at 122. In New York, local Committees on Special Education ("CSE") are responsible for developing appropriate IEPs. Id. at 123. "In

2

developing a particular child's IEP, a CSE is required to consider four factors: (1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs." <u>Gagliardo</u>, 489 F.3d at 107-08. (2d Cir. 2007).

## II. Facts

T.R. is an autistic school-age child. (Plaintiff's Local Civil Rule 56.1 Statement of Material Facts Not in Dispute ("Pl.'s R. 56.1 Stmt."), ¶1.) When T.R. was five years old, in an IEP dated October 17, 2005, the Department classified T.R. with a speech and language impairment and recommended a special class in a community school with related services. (Pl.'s R. 56.1 Stmt., ¶ 3; Declaration of Caroline J. Heller ("Heller Decl."), Ex. V.)

In March of 2006, Plaintiff took T.R. to Dr. Jordana Skurka for a private psycho-educational evaluation. (Heller Decl., Ex. BB.) Dr. Skurka diagnosed T.R. with autism and recommended T.R.'s placement in a special therapeutic school, with a small classroom-teacher ration, for children with autistic spectrum disorders. (<u>Id.</u>) In an April 21, 2006 letter, Plaintiff's Education Advocate notified her Department CSE that Plaintiff had obtained a private psycho-education evaluation and would provide a written version when it was completed. (Defendant's Local Civil Rule 56.1 Statement of Material Undisputed Facts

3

("Defs.' R. 56.1. Stmt."), ¶ 5; Declaration of Michael A. Suarez ("Suarez Decl."), Ex. A, at 4; Plaintiff's Local Civil Rule 56.1(b) Counterstatement to Defendants' Statement of Material Undisputed Facts ("Pl.'s Counter-stmt."), ¶ 5; Heller Decl., Ex. CC.) The letter requested that the CSE reopen T.R.'s case and recommend an appropriate program for the 2006-2007 school year, as Plaintiff felt that her son would require additional services during the upcoming year. (Pl.'s Counter-stmt., ¶ 5(a); Heller Decl., Ex. CC.)

On April 18, 2006, the CSE mailed Plaintiff an appointment letter scheduling T.R. for a May 31, 2006 psychological assessment and educational evaluation. (Defs.' R. 56.1. Stmt., ¶ 4; Suarez Decl., Ex. H.) Plaintiff testified, however, that she never received that appointment letter; because she had not heard from the Department, she assumed that the CSE would use Dr. Skurka's evaluation of T.R. (Pl.'s Counter-stmt., ¶ 4; Transcript of Impartial Hearing ("Tr."), Heller Decl., Ex. C, at 282, 338-340.)

As a result of T.R.'s evaluations, Plaintiff began to investigate alternative public and state-approved private school placements for T.R.[1] After taking an April 5, 2006 tour of the Rebecca School, a non-state approved therapeutic day school in Manhattan, New York, for children with neuro-developmental

---

[1] At this time, T.R. attended Great Commission Christian School, for which Plaintiff paid.

4

disorders including autism, on April 19, 2006, Plaintiff completed an application for enrollment at the Rebecca School. T.R. was accepted to the Rebecca School on May 18, 2006. (Defs.' R. 56.1. Stmt., ¶ 7.)

Dr. Skurka provided Plaintiff with a final written evaluation, reflecting her diagnosis and recommendations, on May 7, 2006. (Pl.'s Counter-stmt., ¶ 5; Tr., at 306-307.) On May 25, 2006, Plaintiff's Education Advocate sent a copy of that evaluation to the CSE and requested that the CSE reconvene at the earliest possible time to review the evaluation and to develop an IEP for the 2006-2007 school year. (Defs.' R. 56.1. Stmt., ¶ 8; Heller Decl., Ex. AA.) On May 30, in order to reserve a place for T.R. for the 2006-2007 school year, Plaintiff executed a contract with the Rebecca School and provided the school with a non-refundable $2,000 deposit. (Defs.' R. 56.1. Stmt., ¶ 9; Pl.'s Counter-stmt., ¶ 9.) Plaintiff paid the deposit because she "needed to know that [T.R.] had a placement for September." (Tr., at 250:5-13.)

By notice dated June 2, 2006, the CSE scheduled a June 12, 2006 meeting to develop an IEP for T.R. (Pl.'s R. 56.1 Stmt., ¶ 5; Heller Decl., Ex II.) At this meeting, Plaintiff asked the CSE to classify T.R. with autism, requested speech-language therapy and occupational therapy services over the summer, and notified the CSE that she was interested in a non-public school

placement for her son. (Tr., at 354, 380; Decision of the State Review Officer ("SRO Decision"), Heller Decl., Ex. A, at 4.) The CSE asked for documentation for these requests. (Tr., at 354, 357; SRO Decision, at 4.) This meeting did not produce an IEP. (Tr., at 353.)

Plaintiff provided the CSE with a June 19, 2006 letter from Dr. Alexei Kartachov, T.R's psychiatrist, concurring with Dr. Shurka's diagnosis of autism. (Pl.'s R. 56.1 Stmt., ¶ 6; Heller Decl., Ex. Y, Z.) Plaintiff and the CSE convened again on July 6, 2006 and produced an IEP; Plaintiff's advocate participated by telephone. (Suarez Decl., Ex. D ("July IEP"); Defs.' R. 56.1. Stmt., ¶ 10.) The July IEP changed T.R.'s classification from speech and language impairment to autism. (Defs.' R. 56.1. Stmt., ¶10; July IEP, at 1.) That IEP also recommended placement in a "special class at a specialized school with related services," and a twelve-month school year, including speech and language therapy and occupational therapy for July and August of 2006. The Department failed, however, to offer T.R. any summer services or placement.

At that July 6, 2006 meeting, Plaintiff did not inform the CSE that she had applied to the Rebecca School, that she had signed a contract with the school, or that she had placed a deposit to secure her son's placement there. (Defs.' R. 56.1. Stmt., ¶10; Tr., at 316, 356-357.) Plaintiff acknowledges that,

6

on July 6, 2006, the CSE could not have known that Plaintiff was dissatisfied with the CSE's recommendations (Defs.' R. 56.1. Stmt., ¶ 10; Tr., at 292.)  At that meeting, however, despite Plaintiff's expressions of concern about a specific school placement for T.R. for the 2006-2007 school year, the CSE did not discuss any such placement.  (Tr., at 234-235; 451-453.)

On August 11, 2006, Plaintiff executed an enrollment agreement with the Rebecca School reflecting a $72,500 tuition and stating that "Rebecca School understands that [plaintiff mother is] pursuing . . . funding through the Department of Education."  (Defs.' R. 56.1. Stmt., ¶ 11; Suarez Decl., Ex. G.) The agreement provided that it could be cancelled on or before August 30, 2006, in the event that the Department offered T.R. an appropriate school placement. (Pl.'s Counter-stmt., ¶ 11(a); Suarez Decl., Ex. G.)

In an August 24, 2006 letter, Plaintiff informed the Department that she was dissatisfied with the July 6, 2006 IEP, that she was unilaterally placing T.R. in the Rebecca School, and that she would be seeking tuition payment and transportation services at an impartial hearing.  (Pl.'s R. 56.1 Stmt., ¶ 7; Defendants' Response to Plaintiff's Local Rule 56.1 Statement of Undisputed Facts ("Defs.' Response"), ¶ 7; Heller Decl., Ex. D; Defs.' R. 56.1. Stmt., ¶ 12.)  Plaintiff also sought the services set forth in the July 6, 2006 IEP.  (Defs.' R. 56.1.

7

Stmt., ¶12.)  The letter asserts that the Department failed to provide her son with a free and appropriate public education and explains the reasons for Plaintiff's dissatisfaction with the July IEP, relating to its failures to ensure that T.R.'s special education provider was a member of the team that developed the IEP and to relate the goals it sets forth to T.R.'s present level of performance.  (Suarez Decl., Ex. C.)

Further, Plaintiff's August 24, 2006 letter notes that, while she had been told that T.R. would be recommended for a public school program on or before July 20, 2006, no such recommendation was made.  Additionally, despite the IEP's recommendation of a twelve-month school year, T.R. had been without an instruction program for July and August, and the CSE had yet to recommend a site-specific special education program. (Suarez Decl., Ex. C.)

The CSE scheduled an educational planning conference for August 31, 2006.  (Heller Decl., Ex. JJ; Tr., at 234.)  When Plaintiff arrived, the CSE personnel did not know why she was there, and no such conference was held.  (Tr., at 235-36.)  That day, the CSE called Plaintiff's representative to reschedule the conference, but Plaintiff's representative declined, advising the CSE that T.R. needed a school and was enrolling in an appropriate private school.  On September 7, without prior notice, the CSE called Plaintiff and tried to hold a telephonic

8

IEP meeting; in order to attend, Plaintiff rescheduled the meeting for September 15, 2006. (Tr., at 236-37.)

T.R. started at the Rebecca School on September 13, 2006. (Tr., at 255.)  Plaintiff attended the rescheduled conference on September 15, 2006.  (Pl.'s R. 56.1 Stmt., ¶ 8; Tr., at 238.) At that meeting, over Plaintiff's objection, the CSE removed T.R.'s paraprofessional from his IEP.  (Tr., at 238; Heller Decl., Ex. HH.)  On September 19, the CSE provided a placement recommendation for T.R., which T.R.'s mother visited, found inappropriate, and rejected. (Tr., at 311-14; Heller Decl., Ex. H.)

### III. Administrative Record

At an impartial hearing requested by Plaintiff, the Department conceded its failure to provide a free and appropriate education (a "FAPE").  (Heller Decl., Ex. B ("IHO Decision"), at 7; Tr., at 26.)  Nonetheless, in a March 12, 2007 decision, the Impartial Hearing Officer ("IHO") found that Plaintiff had failed to establish the appropriateness of the Student's placement at the Rebecca School. (Pl.'s R. 56.1 Stmt., ¶ 10; IHO Decision, at 11; Defs.' R. 56.1. Stmt., ¶ 15.)  It therefore dismissed Plaintiff's request for tuition payment without weighing equitable considerations.  (IHO Decision, at 9; Defs.' R. 56.1. Stmt., ¶15.)

9

Plaintiff appealed the IHO's decision to the State Review Officer of the New York State Education Department ("SRO"). (Pl.'s R. 56.1 Stmt., ¶ 11, Defs.' Response, ¶ 11.) In a July 2, 2007 decision, the SRO found that the Rebecca School was an appropriate placement (SRO Decision, at 14), but affirmed the dismissal of Plaintiff's claim, finding that equitable considerations did not support her request for payment of tuition costs. (Pl.'s R. 56.1 Stmt., ¶ 11; SRO Decision, at 16.) The SRO noted

> that at no time did [Plaintiff] communicate to the CSE that she had applied to the Rebecca School, that she had executed an enrollment agreement with that school, or that a deposit to secure her son's placement had been provided to the Rebecca School. Moreover, neither [Plaintiff] nor her advocate expressed any dissatisfaction with the recommendations arrived at during the July 6, 2006 CSE meeting which served as the basis for the IEP resulting from that meeting. While [Plaintiff] was not precluded from exploring a placement in a private school concurrently with working with [the Department] to devise an appropriate IEP, [Plaintiff] here should have given [the Department's] CSE notice at the June and July CSE meetings of her efforts involving placement of the student at the Rebecca School. In the particular circumstances of this case, she should have timely informed [Department's] CSE of the programming or services at the Rebecca School which she believed were appropriate for her son, and provided information regarding the assessment conducted by the Rebecca School, to give [the Department] an opportunity to model the program or components thereof for [T.R.] [Plaintiff] admitted during her testimony that [the Department] had no reason to know her dissatisfaction with the recommended public school program.

(SRO Decision, at 15) (internal citations omitted).

10

The SRO concluded that

> it was unreasonable for Plaintiff not to provide [the Department] with this information, and provide [the Department] with the functional emotional assessment conducted by the Rebecca School, during the June and July IEP formulation process. Accordingly, the equities do not favor an award of reimbursement of tuition costs.

(Id., at 15-16.) The SRO also faulted Plaintiff's failure to bring T.R. to the May 31, 2006 evaluation appointment and her declination, on August 31, 2006 of the Department's request to reschedule that day's CSE meeting in order to address Plaintiff's concerns. (SRO Decision, at 16.)

On October 30, 2007, Plaintiff brought this action appealing the SRO's decision and requesting tuition reimbursement for the 2006-2007 school year in the amount of $72,500.

**DISCUSSION**

**I. Legal Standard**

A parent dissatisfied with a state review officer's decision to deny tuition reimbursement may bring a civil action in federal district court. 20 U.S.C. § 1415(i)(2)(A) (2005). The reviewing court:

> (i) shall receive the records or the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(B).

"Summary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions," but "the inquiry . . . is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ., 550 F. Supp. 2d 420, 429 n.10 (S.D.N.Y. 2008) (citations omitted).

In that vein, while an IDEA appeal takes the form of a summary judgment motion, the existence of a genuine issue of material fact will not preclude summary judgment. See J.R. v. Bd. of Educ. of the City of Rye Sch. Dist., 345 F.Supp.2d 386, 394 (S.D.N.Y. 2004). Instead, the federal court reviewing an administrative decision under IDEA bases its decision on an independent review of the record using a "preponderance of the evidence" standard. Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 205 (1982). In reviewing an IDEA action, "[w]hile federal courts do not simply rubber stamp administrative decisions, they are expected to give due weight to these proceedings, mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult

12

questions of educational policy." Sherman v. Mamoroneck Union Free Sch. Dist., 340 F.3d 87, 93 (2d Cir. 2003) (quoting Walczak, 142 F.3d 119, 129 (2d Cir.1998)). Nonetheless, a district court must conduct an independent review of the record and exercise its own judgment in deciding whether to grant tuition reimbursement. See Bettinger v. New York City Bd. of Educ., No. 06 Civ. 6889 (PAC), 2007 WL 4208560, *4 (S.D.N.Y., Nov. 20, 2007).

If a state fails to provide a handicapped child with a free appropriate public education, "the parents may enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state." Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 363 (2d Cir. 2006) (citing Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 370 (1985)). The Supreme Court has fashioned a multi-part inquiry, the "Burlington test," under which tuition reimbursement is appropriate if (i) the services offered by the board of education were inadequate or inappropriate, (ii) the services selected by the parent were appropriate, and (iii) equitable considerations support the parents' claim. Burlington, 471 U.S. 359.

## II. Equitable Considerations

As noted above, the SRO decided the first two prongs of the Burlington test in Plaintiff's favor. Here, Defendants concede

13

that they (i) failed to provide Plaintiff with adequate or appropriate services, and (ii) that the Rebecca School was an appropriate placement for T.R. As a result, this case presents the narrow question of whether equitable considerations bar the reimbursement of N.R.'s tuition payments. The Court finds that they do not.

Where, as here, a student is not provided with a FAPE and his private placement is appropriate, "the district court enjoys broad discretion in considering equitable factors relevant to fashioning relief." Gagliardo, 489 F.3d at 112 (citation omitted). A "major consideration in deciding whether the third factor is satisfied is whether the parents have cooperated with the City throughout the process to ensure that their child receives a FAPE." Bettinger, 2007 WL 4208560 at *6. To that end, "courts have held uniformly that reimbursement is barred where parents unilaterally arrange for private educational services without ever notifying the school board of their dissatisfaction with their child's IEP." M.C. ex Rel. Mrs. C v. Voluntown Bd. of Educ., 226 F.3d 60, 68 (2d Cir. 2000). Similarly, where parents unilaterally place their child in a private school and then frustrate the public educational authorities' ability to "place the child in an appropriate private setting of the State's choice," thus making it impossible to conform to IDEA's mandate, equitable

14

considerations demand that the court deny reimbursement. Id., at *7 (denying full reimbursement where parents' lack of cooperation frustrated placement process); see also Carmel Cent. Sch. Dist. v. V.P., 373 F. Supp.2d 402, 416 (rejecting claim of tuition reimbursement when parents "never had the slightest intention of allowing the child to be educated in the public school [and] did everything possible to frustrate a timely review of [the child's] condition" before enrolling the child in private school).

Such circumstances are absent here. Plaintiff provided the Department with ample notice of T.R.'s educational needs, and the record is bereft of any evidence that Plaintiff hindered Defendants' efforts to provide a FAPE or otherwise frustrated the placement process. Defendants premise their motion on their assertions that "plaintiff failed to inform the DOE that she was dissatisfied with the Student's IEP, failed to timely notify the DOE that she had secured a unilateral placement for the Student at the Rebecca School, failed to make the Student available for a timely-noticed CSE evaluation, refused the DOE's efforts to schedule a meeting to address the Student's needs before the new school year began, and overall refused to cooperate with the DOE in securing a proper placement for the Student." (Defendants' Memorandum Of Law in Further Support of Their Motion for Summary Judgment and In Opposition to Plaintiff's Motion for Summary

15

Judgment, at 2.) But the evidence belies each of these assertions.

First, while the SRO Decision, and Defendants' motion, rely on Plaintiff's failure to inform the Department of her dissatisfaction with the July IEP and her interactions with the Rebecca School, Defendants do not argue, and the record does not reflect, that this failure obstructed the Department's placement process or its ability to provide Plaintiff with a FAPE. Moreover, Plaintiff satisfied IDEA requirements by providing written notice, by letter dated August 24, 2006 and more than ten days prior to T.R's removal from public school, of her dissatisfaction with the July 6, 2006 IEP and T.R.'s enrollment at the Rebecca School. See 20 U.S.C. § 1412(a)(1)(C)(iii)(I); SRO Decision, at 14-15 (citing same); Frank G., 459 F.3d at 372 (affirming reimbursement of tuition and stating that, in order to qualify for reimbursement, "[a]ll that is required of parents who have received an IEP for their child is that they provide the appropriate public agency with reasonable notice that they plan to reject the placement proposed by the public agency . . . including stating their concerns and their intent to enroll their child in a private school at public expense") (quotation and citation omitted).

16

Second, even if Plaintiff can be faulted for her failure to make T.R. available for the scheduled May 31, 2006 evaluation,[2] there is no indication that this failure impeded the placement process. And instead of attempting to schedule another evaluation, the Department accepted Dr. Skurka's evaluation for use in preparing the July 6, 2006 IEP. Third, while Defendants fault Plaintiff's purported failure to reschedule an August 31, 2006 meeting, they omit the fact that Plaintiff appeared for that meeting, only to be sent away by CSE personnel. Plaintiff later attended that rescheduled meeting on September 15, 2008.

Contrary to Defendants' contentions and the SRO's findings, the record reflects Plaintiff's cooperation with the Department throughout the placement process. As set forth above, Plaintiff timely requested the re-opening of T.R.'s case and a recommendation for an appropriate educational program, attended every scheduled CSE meeting, provided the CSE with every document that it requested, visited Defendants' belatedly-provided school placement, and timely filed a notice of hearing. In sum, Defendants have not demonstrated that Plaintiff "acted with the requisite level of unreasonableness or misconduct such that reimbursement should be denied on equitable grounds." Jennifer D., 550 F.Supp.2d at 437.

---

[2] As noted above, Plaintiff testified that she never received notice of that scheduled evaluation.

Further, the Department's "abdication of its responsibility to provide . . . FAPE is so clear from the record – and the law's imposition of this duty on the [Department] is so well-settled – that . . . the equities favor the parents." Gabel v. Bd. of Educ. of the Hyde Park Cent. Sch. Dist., 368 F. Supp. 2d 313, 329 (S.D.N.Y 2005) (granting tuition reimbursement claim). Indeed, Defendants have not cited, and the Court is unaware of, any case in which equitable considerations favored a school district that failed to offer a disabled child a school placement prior to the commencement of the school year.

IDEA mandates that "public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things:  give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice." Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993).  Here, Defendants have done neither.  In that light, "Plaintiff's actions were not unreasonable, given her legitimate concerns about the [Department's] ability to make an appropriate placement" for T.R., and "it would be inequitable to reward the [Department] for its admitted failure to comply with IDEA." M.V. v. Shenedehowa Central Sch. Dist., No. 06 Civ. 0571 (LEK), 2008 WL 53101, 5 (N.D.N.Y. Jan. 2, 2008) (granting tuition reimbursement claim where SRO's denial of that claim relied on

18

parents' noncooperation in failing to make child available for intake interviews at school district's recommended placements).

Accordingly, the Court finds that equitable considerations warrant the reimbursement of Plaintiff's $72,500 tuition payment and GRANTS Plaintiff's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendants' motion for summary judgment.  The Clerk of Court shall enter judgment for Plaintiff and close this case.

SO ORDERED:

                                                BARBARA S. JONES
                                                UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
            March 31, 2009